United States District Court
Western District of Texas
Pecos Division

| | |
|---|---|
| United States of America,<br>    Plaintiff,<br><br>    v.<br><br>Thomas Alan Arthur,<br>    Defendant. | No. P-19-CR-774-DC |

**UNITED STATES'S RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY**

**I.      Introduction**

The Discovery at issue in Defendant's motion are a drawing and five text stories published on the Defendant's for-profit website. These materials appeared on author pages of the website. The drawing depicts a naked prepubescent female masturbating. The stories describe sexual acts between adults and children. The drawing and the stories form the basis of the Defendant's charges in this case. The Defendant is charged with violations of 18 U.S.C. §§ 1466A(a), 1462, and 1466.

**II.     Background**

On February 26, 2020, the United States provided a significant batch of discovery to defense counsel. In its e-mail providing links to the discovery, which defense counsel could download, the United States advised that some material would need to be viewed at the U.S. Attorney's Office in Alpine because the material constituted contraband or contained the personal identifying information of other individuals. Within days of the United States's February 26, 2020 e-mail, defense counsel inquired if the materials could be viewed in Austin or the U.S. Attorney's Office for the Southern District of Texas. The United States responded that the materials needed to be viewed in Alpine, where the case was venued.

On March 16, 2020, immediately after the hearing on the Defendant's Motion to Revoke the Order of Detention, the United States made the drawing and five stories available for inspection by defense counsel (who attended the hearing) at the U.S. Attorney's Office in the Pecos

Courthouse.[1]  The FBI case agent was present during this inspection.  Defense counsel was able to make notes regarding the stories and drawing during the inspection.

Due to the current COVID-19 pandemic, all U.S. Attorney's Offices in the Western District of Texas are closed to visitors.  All Assistant United States Attorneys are teleworking, and only minimal numbers of employees, consisting primarily of support staff, are physically working in the U.S. Attorney's Offices.  Assistant United States Attorneys are only permitted to be physically present in the office when absolutely necessary and are not permitted to meet with defense counsel or agents in the U.S. Attorney offices in order to minimize exposing support staff to COVID-19.  Consistent with the direction of the U.S. Attorney for the Western District of Texas, the undersigned Assistant United States Attorney began teleworking on March 17, 2020.

On March 19, 2020, defense counsel inquired about his consulting expert viewing the drawing and requested copies of the stories.  The United States advised the drawing and stories were available for inspection at the FBI Office in Alpine, which is not currently subject to the same restrictions as the U.S. Attorney's Offices, and offered to facilitate this inspection.  In subsequent e-mail correspondence, even though the United States offered to make the drawing available for inspection as requested, defense counsel inquired if the United States would provide a copy of the drawing.  The United States confirmed the contraband material was available for inspection at the FBI Office in Alpine, but copies would not be provided precisely because it was in fact illegal to possess the material.  After the United States advised it would not provide copies of the stories and drawing, the Defendant filed his motion.

### III.   Argument

#### A.  The drawings and the stories constitute contraband.

While a jury will ultimately decide whether the drawing and stories are in fact obscene, a Grand Jury has indicted Defendant based upon these materials and therefore the materials are presumed to be obscene and thus constitute contraband.  Just as the United States would not be

---

[1] Defense Counsel Mark Bennett was not present for the hearing on the Defendant's Motion to Revoke Order of Detention.

**UNITED STATES'S RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY**     **2**

required to provide the Defendant or his counsel with the presumptive controlled substance in a narcotics prosecution, even if a jury had not yet determined the substance was in fact a controlled substance, the United States should not be required to provide a copy of the obscene materials to defense counsel.  If the United States provided defense counsel with the controlled substance in a narcotics case, defense counsel and their experts could be charged with possession of a controlled substance.  Likewise, defense counsel could subsequently be charged with possession of the obscene material especially if they possessed this material outside of their homes.  *See Stanley v. Georgia,* 89 S. Ct. 1243, 1250, 22 L.Ed.2d 542, 568 (1969) (holding that states retain broad power to regulate obscenity, but that power does not extend to mere possession by an individual in the privacy of his own home).  Because the drawing and stories are contraband, defense counsel and their experts should be required to access the drawing and stories at a government facility in Alpine.

The same provisions that apply to accessing child pornography during discovery should apply to obscene material, such as the drawing and stories in this case, given the similar subject matter of the material as well as some of the penalties.  The penalties for violations of 18 U.S.C. § 1466A are the same as the penalties for activities relating to child pornography, and the child pornography statute is referenced in 18 U.S.C. § 1466A, which demonstrates that Congress perceived these materials to be essentially identical in harm.  *See* 18 U.S.C. 1466A(a)(1).  Given that congressional decision, it is reasonable that the same means for providing access to defense counsel and defense experts during the discovery process should apply.  Thus, inspection of the drawing and stories at a government facility in Alpine would be appropriate.

### B. Requiring the United States to produce copies of the drawing and stories violates the Crime Victims' Rights Act.

The United States should not be required to produce copies of the drawing and stories to defense counsel because to do so would violate the Crime Victims' Rights Act. *See* 18 U.S.C. § 3771. While the stories are purportedly fiction and contain disclaimers that the stories do not

**UNITED STATES'S RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　3

describe actual events, there is substantial evidence that the stories are based on real children who were actually sexually abused by the authors and thus are victims of the crimes with which Defendant has been charged. Consequently, the United States has repeatedly offered to make the evidence available for review at a government facility, and Defendant has consistently failed to articulate why this reasonable accommodation that strikes a balance between victims' rights and Defendant's rights is insufficient. Instead, Defendant simply complains that, essentially, Alpine is too remote and inconvenient. Defendant's residence has an Alpine address, and Defendant knew he was being prosecuted in the Pecos Division of the Western District of Texas when he chose to hire an attorney hundreds of miles away in Houston. Thus, inconvenience to his attorney and expert should not trump a victim's right to be treated with fairness and respect for their dignity and privacy.

The stories are generally written in the first person and describe acts of child sexual abuse. One author described traveling to various public beaches and abducting children. Others wrote about child sexual abuse by parents, teachers, and other authority figures. Indeed, during an examination of the electronic devices seized from Defendant's residence, the FBI located an e-mail from Defendant to a person named Karen Fletcher. In the e-mail, Defendant identified the inspiration for his stories of sexual abuse of children, explaining that he changed the age of the girl in his stories to make her appear older than she was in real life. Indeed, one of the stories Defendant wrote describes an adult male who moves to an isolated home in the Arizona desert with his twelve-year-old daughter. The man sexually abuses his daughter while she is sleeping by digitally penetrating her vagina, fondling her breasts, and rubbing his penis on her vagina and anus. This male also masturbates while sexually abusing his sleeping daughter. Obviously, some elements are directly related to Defendant, such as moving to an isolated home in a remote part of Texas desert country near Terlingua.

During the course of his investigation, Agent Ewan was able to confirm the identity of this girl. While the subject-victim (V1) of Defendant's stories does not recall being sexually abused by Defendant when she was a child, Agent Ewan located a female relative (V2) of the subject

**UNITED STATES'S RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY**  4

who was sexually abused by Defendant as a child.  V2 informed Agent Ewan she believed that V1 and that girl's sister (V3) were also sexually abused by Defendant, and V2 took steps to prevent Defendant from being alone with the two girls (V1 and V3).  In another one of his stories, the Defendant actually used the first name of V1.  Because the FBI was able to confirm Defendant's stories are about a real person, it is reasonable to conclude that these stories likely describe actual events, especially because V2 was an actual victim of Defendant.

If Defendant's stories describe real people and likely actual events, it is reasonable to conclude that the stories by other authors on Defendant's website describe actual events and real victims.  Indeed, prior to the execution of the search warrant on Defendant's residence, Agent Ewan was able to identify nineteen (19) subscribers on Defendant's website.  Of those nineteen, nine are registered sex offenders with convictions for child sex abuse, child pornography or both.  Another subscriber is currently awaiting trial in a Utah state court for possessing child pornography and sexually abusing a child.  Another subscriber was identified as a suspect in a 2007 FBI investigation into an online child pornography ring.  In other words, more than 50% of the identified subscribers had already been convicted of child sex crimes or were subjects of child sex crime investigations.  Additionally, many of the author names that appear on Defendant's website are the same as or very similar to unique usernames that appeared in unrelated FBI investigations into child pornography and child sex abuse on other internet forums or peer-to-peer networks.

Federal prosecutors are required, by statute and federal guidelines, to treat these children as victims. *See* 18 U.S.C. § 3771; Attorney General Guidelines for Victim and Witness Assistance, Art. III. L, *located at* http://www.justice.gov/olp/pdf/ag_guidelines2012.pdf. The CVRA provides victims with eight court-enforceable rights, including the "[t]he right to be reasonably protected from the accused" and "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." *See* 18 U.S.C. § 3771(a)(1) and (8).

Accordingly, the United States should not be required to provide copies of the drawing and the stories to defense counsel because to do so would violate the CVRA's clear mandate that

**UNITED STATES'S RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY**     **5**

victims have a right to be treated with fairness and with respect for the victim's dignity and privacy. The best way to ensure the respect for each victim's dignity and privacy is to maintain the stories in a government facility for the defense team to review. Such solution strikes an appropriate balance between victims' rights and Defendant's right to access the evidence by providing the defense with an ample opportunity to review the evidence, exactly as is done in cases involving child pornography. *See* 18 U.S.C. § 3509(m) (providing that contraband evidence must be made "reasonably available" to the defense in a government or court facility, and that reasonably available is defined as providing the defense with an "ample opportunity" to access and review the evidence).

### C. The drawing and stories should be accessed at a government facility in Alpine.

Given the sensitive nature of these materials, they should only be accessed by defense counsel and their experts at a government facility in Alpine. Since February 26, 2020, the United States has indicated it willingness to make the drawing and stories available for inspection in Alpine. Should defense counsel and their experts desire that the inspection take place during the COVID-19 outbreak, the inspection will need to occur at FBI Alpine, which the United States is willing to facilitate for defense counsel and their experts.

As an alternative to viewing the drawing and stories in Alpine, the United States will make these materials available for inspection at the U.S. Attorney's Office in the Pecos Courthouse as the United States did on March 16, 2020. Because the U.S. Attorney's Office in Pecos is not staffed, there would not be the concern about exposing support staff to COVID-19. Nor would it impose an undue burden on Agent Ewan to travel from Alpine to Pecos to be present for the inspection of the drawing and the stories.

Defense counsel claims it is a waste to make their experts travel to Alpine to view these materials. However, Defendant resided in Alpine before his arrest and operated his website out of his home. The trial in this matter will be in Pecos. While it may pose an inconvenience for defense counsel and their experts to travel to Alpine or Pecos, the evidence is located in the

Pecos Division of the Western District of Texas, and that fact was known prior to accepting Defendant's retainer for legal services.

### D. If the United States is ordered to produce copies of the drawing and stories, the Court should issue a Protective Order.

If the Court is inclined to order the United States to produce a copy of the drawing and stories to defense counsel, then the United States requests that the Court issue a Protective Order in connection with the production of these materials in light of the facts of the case. The Defendant did not simply possess the obscene drawing and stories. Rather, he is charged with distributing or possessing with the intent to distribute the obscene materials, transportation of obscene materials, and engaging in the business of selling or transporting the obscene materials. If the United States provides copies to defense counsel as proposed in Defendant's motion, the United States is concerned Defendant or his wife, who has not been charged, but was involved in the business, could later use these obscene materials to create another website for distribution. The website, which Defendant used to publish these stories and drawing, was the primary source of income for Defendant and his wife. Indeed, the Texas Rules of Professional Conduct for lawyers would likely create an obligation on the part of defense counsel to provide copies of these stories to Defendant at the conclusion of his case. *See* Texas RPC 1.14(b) and 1.15(d); *see also* Texas Ethics Opinion No. 657, May 2016. Notably, Defendant continued to operate his website even after two of his authors, Frank McCoy and Karen Fletcher, who operated similar websites, were prosecuted in federal court for similar obscenity violations.

Consequently, under the terms of this proposed Protective Order, these materials should be maintained in defense counsel's office in secure fashion, such as a safe. Furthermore, only defense counsel or their designated experts should be permitted to review the material while in defense counsel's office. Defense counsel should not be permitted to make copies of these materials or otherwise distribute or transport the materials, either to a third party or to themselves via electronic means, e.g., email or cloud storage. Nor should defense counsel be permitted to allow anyone to view the drawing and stories aside from their designated experts. At the

**UNITED STATES'S RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY**  7

conclusion of this case, defense counsel should be required to return the drawing and stories to the United States.

If the Court is inclined to allow defense counsel to provide copies of the drawing and stories to their designated experts, rather than requiring those experts to view the materials at defense counsel's office, then defense counsel should be required to identify those experts retained in connection with the case. Once those experts have been identified, those experts should be required to sign a copy of the Protective Order before defense counsel provides copies of the drawing and stories for their review, thereby obligating the expert to abide by the order the same as the parties to this criminal litigation such that any violation of the Protective Order could result in contempt charges for the expert if he/she were to violate it. At the conclusion of the case, defense counsel and their experts should be required to return these materials to the United States.

### IV.     Conclusion

The United States respectfully requests that defense counsel and their experts be required to inspect the drawing and stories in the Pecos Division of the Western District of Texas. In the alternative, if the Court is inclined to order the United States to produce copies of the story and drawings to defense counsel, the United States moves this Court to issue a Protective Order addressing the handling and dissemination of these materials.

        Respectfully submitted,

        John F. Bash
        United States Attorney

By:   */s/ Monica R. Morrison*
        Monica R. Morrison
        Assistant United States Attorney
        Idaho Bar No. 7346
        2500 North Highway 118, Suite A-200
        Alpine, Texas 79830
        (432) 837-7332 (phone)
        (432) 837-7449 (fax)
        Monica.Morrison@usdoj.gov


        Austin M. Berry
        Trial Attorney
        Child Exploitation & Obscenity Section
        Department of Justice
        Austin.Berry2@usdoj.gov

## Certificate of Service

I certify that on April 22, 2020, I electronically filed this document with the Clerk of Court using the CM/ECF system.

☐ The CM/ECF system will send notification to the following CM/ECF participants:

Lane Haygood (lane@haygoodlawfirm.com)
Mark Bennett (md@ivi3.com)

*/s/ Monica R. Morrison*
Monica R. Morrison
Assistant United States Attorney