UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 4:19-CR-774 |
| | ) | |
| v. | ) | (Judge Counts) |
| | ) | |
| THOMAS ALAN ARTHUR | ) | |
| | ) | |
| Defendant. | ) | |

### UNITED STATES' TRIAL BRIEF

**I.     CHARGES**

On October 8, 2020, a Grand Jury in the Western District of Texas indicted Thomas Alan Arthur in a multi-count indictment charging him with Distribution or Possession with Intent to Distribute Obscene Visual Representations of the Sexual Abuse of Children, in violation of 18 U.S.C. § 1466A(a)(1) (Counts 1, 8, and 9); Importation or Transportation of Obscene Matters, in violation of 18 U.S.C. § 1462(a) (Counts 2-6); and Engaging in the Business of Selling or Transferring Obscene Matter, in violation of 18 U.S.C. § 1466 (Count 7).

**II.    SUMMARY OF THE FACTS**

The following is a summary of the facts the United States expects to be developed during the trial of this case. It is intended for the convenience of the trial court and in no way limits or binds the United States.

Since approximately 1996, Defendant Thomas Arthur has been the administrator of a website, mrdouble.com, dedicated to publishing writings that detail the sexual abuse of children, including the rape and torture of infants and toddlers. The stories that appeared on the website were

organized according to the author who wrote each story. Some of the author pages contained drawings depicting children engaged in sexually explicit conduct. All stories and drawings were submitted to the Defendant through the website, and the Defendant then published the stories and drawings to the site.

While partial versions of the stories could be viewed by the general public, a paid membership was required to access complete versions of the stories. The website displayed a feature that allowed members to see the most popular stories of the day. Members could also search for stories by topics. The website allowed for communication between authors and members.

The Defendant operated the website out of his home in Terlingua, Texas, but the website was hosted by a server in the Netherlands. The website was the Defendant's sole source of income, and he used the proceeds of the mrdouble website to purchase real and personal property. The remoteness of the Defendant's property allowed the Defendant to operate the website in relative anonymity and helped facilitate its operation.

Special Agent Jeremy Ewan with the Federal Bureau of Investigation ("FBI") began investigating the website in April 2019. On November 7, 2019, the FBI executed a search warrant of Defendant's residence. During the execution of the search warrant, numerous pieces of evidence, including a number of electronic devices, which were used to operate the website, were seized. On that same date, the Defendant was interviewed by FBI Special Agent Clay Trant and Department of Public Safety Special Agent Derek Pearson. Following the execution of the search warrant and the conclusion of his interview, Defendant was arrested. Defendant has been detained since his arrest.

Pursuant to a Multilateral Legal Assistance Request, the United States obtained evidence from Defendant's server in the Netherlands. Forensic examinations were conducted of the devices seized from Defendant's home and the server obtained from the Netherlands.

### III. POTENTIAL EVIDENTIARY ISSUES

#### A. Stipulations

In the spirit of the Court's Standing Discovery Order, the parties have stipulated to several facts and points of law. A copy of the stipulation signed by the parties is attached as Attachment 1.

As reflected in the attached stipulation, only the following elements are contested:

1. Whether any of the charged stories or drawings are obscene;
2. Whether drawing 1 depicts sexually oriented material, and
3. Whether any of the drawings depict a minor.

In addition to the factual and legal stipulations related to the criminal case, both parties have also reached numerous stipulations related to the forfeiture portion of this case. Assuming the defendant is found guilty by the jury, there are only three assets for which the parties could not stipulate to a nexus. The assets are as follows:

1. $2,270, more or less, in U.S. Currency;
2. A Canon digital camera; and
3. Box of VHS tapes.

Lastly, the United States would like to note for the Court, that the Defendant has stipulated to the authentication and admissibility of exhibits including those items seized from his house and from the server in the Netherlands.

#### B. Exhibits During Opening Statements

In its opening statement, the United States may display exhibits that it will later seek to admit during the trial. The United States' opening will be confined to a summary of the issues in the case and the evidence the United States intends to offer, which it believes will be available and admissible. *See*, ABA Standards for Criminal Justice 3-5.5 (3d ed. 1993); *Testa v. Mundelein, Illinois*, 89 F.3d 443, 445 (7th Cir. 1996); *see also*, *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988).

### C. Marital Privilege

The United States intends to call Sandra Arthur, Defendant's estranged wife, as a witness. They were married in Texas in 2004. Since Defendant's arrest on November 7, 2019, Mrs. Arthur has filed for legal separation from Defendant. Mrs. Arthur moved out of the marital residence and relocated to Hawaii. Mrs. Arthur is willing to testify about the following: Defendant's operation of the mrdouble website; her knowledge of the website; her role in the mrdouble website and the related businesses; the income earned from the mrdouble website; the businesses Mr. Double, Inc., SC Prod., Inc. and AOK Contractors; Defendant's interactions with mrdouble authors; and about Defendant's electronic devices. None of the proposed testimony by Mrs. Arthur is privileged.

Federal Rule of Evidence 501 provides that common law generally determines issues of evidentiary privilege. Fed. R. Evid. 501 ("The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court."); *see also United States v. Singleton*, 260 F.3d 1295, 1300 (11th Cir. 2001) ("The general issue of evidentiary privilege in criminal cases is governed by the first sentence of Rule 501 of the Federal Rules of Evidence . . . ."). Therefore, the question of marital privilege in

federal criminal cases is governed by current federal common law.[1] *Trammel v. United States*, 445 U.S. 40, 47 (1980) (stating that by passing Federal Rule of Evidence 501, "Congress manifested an affirmative intention not to freeze the law of privilege" with the purpose of "provid[ing] courts with the flexibility to develop rules of privilege on a case-by-case basis"). There are currently two marital privileges recognized by the federal common law: (1) adverse spousal testimony privilege and (2) the marital communications privilege. *Singleton*, 260 F.3d at 1297; *United States v. Entrekin*, 624 F.2d 597, 598 (5th Cir. 1980).

The adverse spousal testimony privilege protects the witness-spouse from being compelled to testify adversely against the defendant-spouse about evidence of criminal acts, including non-confidential communications and matters that occurred prior to the marriage. *Trammel*, 445 U.S. at 49; *Entrekin*, 624 F.2d at 598. The adverse spousal testimony privilege is seemingly broad, but it is not absolute and has important limitations. *See United States v. Cameron*, 556 F.2d 752, 755 (5th Cir. 1977); *see also Trammel*, 445 U.S. at 52; *Singleton*, 260 F.3d at 1297. First, this privilege may **only** be asserted by the witness-spouse. *Trammel*, 445 U.S. at 53; *Singleton*, 260 F.3d at 1297. Second, it should only be applied where, under the circumstances of the case, the purpose of the privilege would be served. *Trammel*, 445 U.S. at 52. Because of this, the privilege does not exist, even for the witness-spouse, if the marriage is no longer viable or is "moribund." *Cameron*, 556 U.S. at 756 (finding no adverse spousal testimony privilege existed ". . . where, as here, the spouse was called to testify only as to objective facts, with no questions allowed as to any communication between the spouses, and where the evidence supported a finding that the marriage was no longer

---

[1] Nonetheless, federal courts construe the marital privileges narrowly because evidentiary privileges obstruct the truth seeking process. *United States v. Nixon*, 418 U.S. 683, 710 (1974); *Singleton*, 260 F.3d at 1299.

viable and its members had little hope or desire for reconciliation, reason, experience and common sense indicate that the traditional policy reasons for the privilege are non-existent").

The marital communications privilege, by contrast, bars the disclosure of confidential communications within the marriage. *Trammel*, 445 U.S. at 49; *Entrekin*, 624 F.2d at 598. "The privilege, generally, extends only to utterances, and not to acts." *Pereira v. United States*, 347 U.S. 1, 6 (1954). Unlike the adverse spousal testimony privilege, the marital communications privilege can be invoked by either spouse. *Singleton*, 260 F.3d at 1298 n.2 ("The marital communication privilege, when available, can be asserted by a defendant to prevent his or her spouse from testifying concerning the communication and to exclude related evidence.") Several exceptions to the marital communications privilege exist, including communications between spouses about crimes in which they jointly participated. *See United States v. Ramirez*, 145 F.3d 345, 355 (5th Cir. 1998); *United States v. Chagra*, 754 F.2d 1181, 1182 (5th Cir. 1985); *United States v. Miller*, 588n F.3d 897, 904-905 (5th Cir. 2009). So long as the testimony concerns the joint criminal activity, the exception applies regardless of whether the testifying spouse has been charged with a crime. *See Ramirez*, 145 F.3d at 355. Texas has codified this exception. TX R. EVID. 504(a)(4)(A) ("This privilege does not apply…if the communication is made--wholly or partially--to enable or aid anyone to commit or plan to commit a crime or fraud.")

Here, Defendant cannot invoke either the adverse spousal testimony privilege or the marital communications privilege to prevent Mrs. Arthur from testifying. Because Mrs. Arthur is willing to testify, Defendant cannot preclude her adverse spousal testimony. Moreover, even if Mrs. Arthur became unwilling to testify at trial, her testimony could be compelled because their marriage is no longer viable. Defendant cannot invoke the marital communications privilege because Mrs. Arthur is not testifying to any confidential communications. Even if Mrs. Arthur

were to testify to any confidential communications, the exception would apply because the communications concern joint criminal activity involving the operation of the mrdouble website. The Court previously granted immunity to Mrs. Arthur, and counsel was appointed to represent her, which reflects that Mrs. Arthur could have been charged for her role in the mrdouble website. In short, Defendant cannot prevent Mrs. Arthur from testifying about Defendant's operation of the mrdouble website; her knowledge of the website; her role in the mrdouble website and the related businesses; the income earned from the mrdouble website; the businesses Mr. Double, Inc., SC Prod., Inc. and AOK Contractors; Defendant's interactions with mrdouble authors; and about Defendant's electronic devices.

### D. Rule of Completeness – Federal Rule of Evidence 106

The United States intends to introduce multiple clipped portions from the video-recorded statements made by Defendant but has no intention to play the recorded statement in its entirety. Defendant's statement is approximately three hours in length.

Federal Rule of Evidence 801(d)(2) provides that a statement is not hearsay, and is therefore admissible, if the statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, or (B) a statement of which the party has manifested an adoption or belief in its truth.  Statements made by Defendant in his arrest interview are a quintessential statements by a party-opponent when offered by the United States.  Those very same statements, however, are inadmissible hearsay when offered by Defendant.

To ensure fairness, Federal Rule of Evidence 106 provides another avenue by which a party-opponent may admit his own out-of-court statements at trial, which would otherwise be inadmissible hearsay.   Specifically, Rule 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time

> of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it. Fed. R. Evid. 106. The advisory committee notes explain that "[t]he rule is an expression of the rule of completeness . . . . The rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial." Fed. R. Evid. 106, advisory committee notes.

The Fifth Circuit has explained Rule 106 thus:

> At the same time Fed. R. Evid. 106 encourages completeness in writings or recordings, it restricts a requirement of completeness by the qualification that the portion sought to be admitted must be relevant to the issues, and only the parts which qualify or explain the subject matter of the portion offered by the opponent need be admitted.

*United States v. Crosby*, 713 F.2d 1066, 1074 (5th Cir. 1983). The courts of appeals have "consistently held that the rule permits introduction only of additional material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced." *United States v. Pendas-Martinez*, 845 F.2d 938, 944 (11th Cir. 1988); *see also United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996) ("Although different circuits have elaborated Rule 106's fairness standard in different ways, common to all is the requirement that the omitted portion be relevant and necessary to qualify, explain, or place into context the portion already introduced.") (quoting *Pendas-Martinez*, 845 F.2d at 944). Furthermore, just because an excluded portion is relevant, does not necessarily mean that it is necessary to qualify, explain or place into context. *Branch*, 91 F.3d at 728 (affirming exclusion of statements as self-serving exculpatory statements by the defendant that did not explain or qualify the rest of the statement originally offered by the United States); *United States v. Langford*, 647 F.3d 1309, 1331 (11th Cir. 2011) (affirming exclusion of transcript of defendant's testimony in SEC hearing because defendant failed to identify what specific portions would qualify, explain or place into context the portions that were introduced by

the United States); *United States v. Johnson*, 579 F. App'x 867, 870 (11th Cir. 2014) (affirming exclusion of recorded calls where defendant's requested additional portions failed to satisfy the "qualify, explain or place in context" elements of Rule 106).

Judge Posner, in *United States v. LeFevour*, 798 F.2d 977 (7th Cir. 1986), provided a colorful example of the rule of completeness and the unfairness it is intended to address: "An example would be accusing the Biblical David of blasphemy for saying, 'There is no God,' his full statement being, 'The fool hath said in his heart, there is no God.'" *Id.* at 981 (citing *Trial of Algernon Sidney*, 9 Howell's State Trials 818, 868-69 (K.B. 1683)).   As the *LeFevour* court noted, "[w]e are far from that paradigmatic case here."  *Id*.

Similarly, Defendant should not be permitted to introduce numerous self-serving exculpatory statements made during the same recording in which he makes an inculpatory statement. If he wishes to testify regarding his exculpatory statements, he has a right, although no obligation, to do so.   Regardless, he should not be permitted to place his entire defense before the jury through the self-serving hearsay statements made in his arrest interview.

Below, the United States has precisely designated the start and end times of the recordings it intends to introduce.   Due to the technical requirements of editing video recordings, there will be a delay in the trial if the United States is required to add or subtract from any of these clips.

| Exhibit | Start Time to End Time of Clip |
|---------|-------------------------------|
| 26A | 5:42-5:51 |
| 26B | 12:00-18:14 |
| 26C | 28:50-28:59 |
| 26D | 45:27-51:38 |
| 26E | 52:57-58:05 |
| 26F | 1:00:33-1:07:42 |
| 26G | 1:11:21-1:12:23 |
| 26H | 1:13:06-1:13:30 |
| 26i | 1:20:34-1:20:52 |
| 26J | 1:21:35-1:22:51 |
| 26K | 1:27:00-1:27:57 |

| | |
|---|---|
| 26L | 1:36:38-1:36:44 |
| 26M | 1:43:05-1:47:16 |
| 26N | 1:56:03-1:56:41 |
| 26O | 2:10:16-2:11:54 |
| 26P | 2:51:38-2:52:59 |
| 26Q | 2:57:05-2:57:32 |
| 26R | 2:58:40-2:59:33 |

In *United States v. Flentge*, 151 F. App'x 490, 491 (8th Cir. 2005), the United States, prior to trial, requested three short segments from two fifteen-minute jail calls made by the defendant be played at trial. The defendant requested the entirety of both calls be played for the jury. The district court sustained the United States' objection to playing the entire conversations on the ground that the additional statements contained in the calls constituted hearsay. *See id.* The trial court, however, did give the defendant the opportunity to enter into evidence other portions of the calls that would place the United States' three short segments into context, but the defendant did not identify any additional portions. *See id.* Accordingly, the district court permitted the United States to play its previously identified segments without playing the entirety of the calls. The Eighth Circuit affirmed. *See id*.

To the extent the defendant contends the statements offered against him are taken out of context, the burden is now on the defendant to provide an explanation as to what additional statements should be played so as to "qualify, explain, or place into context the portion already introduced." *Branch*, 91 F.3d at 728. Indeed, Rule 106's "qualifying words 'ought in fairness,' show that the duty to place 'any other part' of the recorded statement or any other 'recorded statement' in evidence is not absolute." *LeFevour*, 798 F.2d at 981. "[O]bviously, the admission of one recorded statement could not require the admission of every other such statement in the party's possession." *Id*. Such a rule would lead to absurd results.

In this case, for example, such a rule would mean that if the United States plays a two-minute segment, then it would also have to play the other 178 minutes because the entire recording is in the possession of the United States. There is no basis in reason or common sense to conclude that it would take two hours to place those two minutes in context.

Instead, Defendant should provide the United States, and this Court, with what additional statements Defendant believes will "qualify, explain, or place into context" the portions the United States intends to introduce so that this Court can make an informed decision as to the issue of fairness under Rule 106. Failure by Defendant to identify any specific statements he wants admitted should result in this Court's denial of his request to play additional portions of the recordings on the grounds that he has failed to carry his burden of demonstrating how the additional statements would "qualify, explain, or place into context" any specific statement offered by the United States. *See Flentge*, 151 F. App'x at 491.

IV.   **FORFEITURE**

A. **STATUTORY AUTHORITY FOR FORFEITURE**

The statute prescribing forfeiture for the Title 18 U.S.C. §§ 1462 and 1466A violations is Title 18 U.S.C. § 1467.

Section 1467 states:

> (a) Property subject to criminal forfeiture. -A person who is convicted of an offense involving obscene material under this chapter shall forfeit to the United States such person's interest in -
>
> (1) any obscene material produced, transported, mailed, shipped or received in violation of this chapter;
> (2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and
> (3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense.

### B. PROCEDURE FOR FORFEITURE PHASE OF TRIAL

#### 1. FORFEITURE PHASE IS BIFURCATED FROM TRIAL

Criminal forfeiture procedures are governed by Rule 32.2 of the Federal Rules of Criminal Procedure. Rule 32.2 requires that a trial must be bifurcated into a guilt and innocence phase, and a forfeiture phase. *See United States v. Meffert*, No. 09–374, 2010 WL 2360776, *17 (E.D. La. June 7, 2010) (denying defendant's pretrial motion to bifurcate the trial as unnecessary; bifurcation is automatic under Rule 32.2(b)(1). Additionally Rule 32.2 requires that the hearing take place "as soon as practical."

#### 2. RIGHT TO A HEARING

If the forfeiture is contested and either the United States or Defendant requests a hearing, "the court *must* conduct a hearing . . . ." Fed. R. Crim. P. 32.2(b)(1)(B). Here, Defendant advised the Court of his request for a hearing under Rule 32.2. As such, a hearing is now required. *See United States v. Reese,* 36 F. Supp. 3d 354, 361 (S.D.N.Y. 2014) (district court erred in entering forfeiture order without granting defendant's request for a hearing under Rule 32.2(b)(1)(B); *order vac'd, hearing granted, and order reimposed*).

#### 3. RIGHT TO A JURY

Because criminal forfeiture is a part of sentencing, rather than a substantive element of the offense, there is no constitutional right to a jury determination of forfeiture. *Libretti v. United States*, 516 U.S. 29, 38-39, 49 (1995). However, Federal Rule of Criminal Procedure 32.2(b) does give a criminal defendant and the United States a limited right to request that the jury be retained to "determine the forfeitability of specific property." This right must be affirmatively asserted. *United States v. Fisch*, 851 F.3d 402 (5th Cir. 2017) (where defendant did not request a jury determination of forfeiture, court reviews for plain error whether court failed to comply with Rule

32.2 in failing to explicitly determine whether either party requests a jury and, assuming court clearly erred, appellant must show the error was prejudicial.) Defendant has affirmatively advised the United States and the Court of his request for a jury determination of forfeiture. As such, a post-verdict jury hearing must take place.

### 4. ADMISSIBILITY OF EVIDENCE

To make this determination, the Court may rely on "evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). Furthermore, forfeiture is considered part of the defendant's sentence. As such, the rules of evidence are much more relaxed and allow for the use of hearsay. *United States v. Ivanchukov*, 405 F. Supp. 2d 708, 709 n.1 (E.D. Va. 2005) (because forfeiture is part of sentencing, reliable hearsay is admissible to establish the forfeitability of the property.)

### 5. BURDEN OF PROOF

Although the burden of proof on the United States regarding guilt/innocence phase of trial is beyond a reasonable doubt, in the forfeiture phase, the burden is much lower. The burden of proof on the United States to establish the requisite nexus is a preponderance of the evidence. *United States v. Gasanova*, 332 F.3d 297, 301 (5th Cir. 2003) ("statutorily-prescribed forfeiture is warranted upon a showing of a preponderance of the evidence").  *United States v. Juluke*, 426 F.3d 323, 326 (5th Cir. 2005) ("The government must establish the requisite nexus between the property and the offense by a preponderance of the evidence;" citing *Gasanova*); *See also United States v. Hull*, 606 F.3d 524, 527 (8th Cir. 2010) (preponderance standard applies to the forfeiture of property used to commit a child pornography offense; 18 U.S.C. § 2253).

### 6. HEARING IS ONLY TO DETERMINE NEXUS

Once a Defendant has been found guilty of a count where "criminal forfeiture is sought" for specific property, the court must determine if the government has "established the **requisite nexus between the property and the offense**." Fed. R. Crim. P. 32.2(b)(1)(A). The focus of the hearing surrounds the asset and its nexus to the criminal conduct and, as such, the defendant may not attempt to re-litigate the legality of his conduct. *United States v. Warshak*, 631 F.3d 266, 331 (6th Cir. 2010) (affirming district court's refusal to let defendant introduce evidence tending to show his conduct was not illegal; in the forfeiture phase the legality of the conduct is "no longer a live issue"; the only question is the nexus between the conduct and the offense).

In the case before the Court, there are two potential nexuses that the jury may find in making their determination. Title 18, U.S.C. Section 1467 allows the forfeiture of property found to be: (1) constituting or traceable to gross profits or other proceeds; and/or (2) property that was used to promote [, facilitate] the commission of the offenses.

The term "proceeds" means property of any kind obtained, directly or indirectly, as the result of the commission of the offense. Property derived from proceeds of the offense includes any property which constitutes or is derived from proceeds traceable to the violations. *See United States v. Farkas*, 474 F. App'x 349, 359-60 (4th Cir. 2012) ("the 'but for' nexus test [was] first articulated by the Seventh Circuit in *United States v. Horak*, 833 F.2d 1235, 1242-43 (7th Cir. 1987), and since applied by a number of other courts . . . Pursuant to this test, funds are considered proceeds and therefore deemed forfeitable if 'a person would not have [the funds] *but for* the criminal offense.'"; quoting *Nicolo*, 597 F. Supp. 2d at 346).

To "facilitate" the commission of an offense means to aid, promote, advance, or make easier, the commission of the act or acts constituting the offense. *United States v. Puche,* 350 F.3d 1137, 1153 (11th Cir. 2003) ("[f]acilitation occurs when the property makes the prohibited conduct less

difficult or more or less free from obstruction or hindrance"); *See also United States v. Hull*, 606 F3d 524, 528 (8th Cir. 2010) (facilitating property includes more than the "instrument" actually used to commit the crime; when defendant distributed child pornography on the internet, his computer was the instrument, but his house was forfeitable because it provided him with a secure location where he could operate in privacy).

### 7. THIRD PARTY INTERESTS ARE NOT RIPE FOR LITIGATION

As stated in paragraph six above, the sole purpose of the requested hearing is to determine the nexus of the asset to the crime. Third party interests, such as those of a spouse, business partner, or lienholder are not ripe.    *United States v. Andrews*, 530 F.3d 1232, 1236 (10th Cir. 2008) (when court determines the forfeitability of the property under Rule 32.2(b)(1), it does not—"and indeed may not"—determine the rights of third parties in the property; the ownership issue is deferred to ancillary proceeding); s*ee also United States v. Faulk*, 340 F. Supp. 2d 1312, 1315 (M.D. Ala. 2004) (Rule 32.2(b)(2) requires that court order the forfeiture of property, including substitute assets, without regard to whether a third party has an interest in all or part of it.).

Furthermore, it is improper for the defendant to contest the forfeiture on the grounds that he does not own the property in question. *United States v. Brown*, No. 04 CR 159 NGG, 2006 WL 898043, *5 (E.D.N.Y. Apr. 4, 2006) (defendant cannot object to the forfeiture of real property involved in a money laundering offense on the ground that the property belongs to his wife; the proper procedure is for court to enter a preliminary order of forfeiture as to the property and allow the wife to file a claim in ancillary proceeding); s*ee also United States v. Rivers,* 60 F. Supp. 3d 1262 (M.D. Fla. 2014) ("any objection [defendant] may have on the basis that a third party holds an interest in forfeitable property is not his objection to make".).

Respectfully submitted,

GREGG N. SOFER
United States Attorney


/s/
AUSTIN M. BERRY
Trial Attorney
Department of Justice
Child Exploitation & Obscenity Section
1301 New York Avenue, NW
11th Floor
Washington, DC 20005
Austin.Berry2@usdoj.gov


/s/
MONICA MORRISON
Assistant United States Attorney
Idaho Bar No. 7346
110 9th Ave. South, Suite A961
Nashville, Tennessee 37203
(615) 736-5151(phone)
Monica.morrison@usdoj.gov


/s/
FIDEL ESPARZA III
Assistant United States Attorney
State Bar No. 24073776
601 NW Loop 410, Ste. 600
San Antonio, Texas 78216
(210) 384-7026
(210) 384-7045
Fidel.esparza@usdoj.gov