## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## PECOS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CRIMINAL NO. 4:19-CR-774-DC** |
| | § | |
| **THOMAS ALAN ARTHUR,** | § | |
| | § | |
| **Defendant.** | § | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE

TO THE HONORABLE JUDGE DAVID COUNTS, UNITED STATES DISTRICT JUDGE:

COMES NOW, the United States of America, by and through the United States Attorney for the Western District of Texas, and through the undersigned Trial Attorney and Assistant United States Attorneys, and hereby submits this response to the Defendant's Motion in Limine.

## 1.   INTRODUCTION

The Defendant's Motion in Limine (Doc. 77) was filed on January 21, 2021. In said motion the Defendant requested two separate orders. The first of which was a request for an order by the Court requiring the United States to exclude the evidence it intends to offer that is duplicative of the facts stipulated by the parties. The United States contends that the Court should deny the request for such order and Defendant's arguments in support of said order are incorrect.

The second argument requests an order preventing the United States from introducing the following evidence:

1. Argument or evidence that the works in question, or similar works might cause abuse against children;

2. Opinion evidence that the works in question satisfy any element of the *Miller* test for obscenity, that is:

    a.   that the work appeals predominantly to prurient interest;

    b.   that the work depicts or describes sexual conduct in a patently offensive way; or

    c.   that the material, taken as a whole, lacks serious literary, artistic, political, or scientific value;

3.   Evidence of any other crime, wrong, or act; and

4.   Any testimony by Mr. Arthur's estranged wife, Sandra Arthur.

The United States addresses each of the above issues in detail below.

## 2.  <u>ARGUMENT</u>

### A.  Duplicative Evidence

Defendant argues both in his Motion in Limine (Doc. 77) and in his Amended Trial Brief (Doc. 80) that: (1) by virtue of the agreed stipulations a number of facts are conclusively proven, and (2) thus any evidence offered in support of those facts is duplicative. In Defendant's Motion in Limine (Doc. 77), he fails to cite any relevant precedent to support these assertions. Defendant's citation to *United States v. Caldwell*¸ 586 F.3d 338 (5th Cir. 2009) is in opposition to Defendant's argument on the duplicative nature of any of the evidence potentially offered by the United States.

Defendant's first argument is a mischaracterization of precedent. Courts have held that defendants are unable to argue on appeal, that the government failed to prove a stipulated fact and/or element. *United States v.* Branch, 46 F.3d 440, 442 (5th. Cir. 1995); *See also Poole v. United States,* 832 F.2d 561, 565 (11th Cir.1987), *cert. denied,* 488 U.S. 817, 109 S. Ct. 54, 102 L.Ed.2d 33 (1988). These holdings do not find that the stipulations are conclusively proven. They only hold that the defendant may not challenge the sufficiency of the evidence as to a stipulated element. This is not the same as finding that the stipulated facts and/or elements are conclusively proven.

   Defendant's arguments also falter is in his push to exclude evidence as duplicative considering the stipulations agreed to by all parties. Defendant fails to cite any rule or case in his

motion that supports this argument. As discussed *infra,* Defendant's lone citation, *Caldwell*, does not support his assertions. Furthermore, the trial brief filed by Defendant does not expand on, or even remotely address, the duplicative argument. The trial brief only cites *Caldwell* in support of the "conclusively proven" argument.

Defendant argues that under Federal Rules of Evidence 403, the evidence should be excluded because it is duplicative considering the stipulations. As such, its probative value is substantially outweighed by the unfairly prejudicial nature of the evidence. Defendant is incorrect.

The Supreme Court, in *Old Chief v. United States* 519 U.S. 172 (1997), addressed this issue in the context of a stipulation in a felon in possession case. *Id.* The Supreme Court held that the defendant's stipulation regarding the defendant's status as a felon precluded the United States, pursuant to Rule 403, from introducing evidence as to the *nature* of the felony. *Id* at 192. In other words, the United States could not introduce evidence of what the defendant did to become a felon.

In addition to the limitation to felon in possession cases, courts have held that *Old Chief* sets the rule that when a court is addressing the exclusion of evidence, under the same arguments made by defense in this case,  the decision turns on contribution of the challenged evidence to the overall narrative of the United States' case. *United States v. Caldwell,* 586 F.3d 338, 343 (5th Cir. 2009). The reason for this determination is because courts resoundingly recognize the importance of the United States' right to present evidence and try its case.

In fact, both the Supreme Court in *Old Chief* and the Fifth Circuit in *Caldwell* explained how important it is to allow the United States to present evidence and try its own case. Indeed, in *Old Chief*, the Supreme Court explained:

> Evidence ... has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. This persuasive power of the

> concrete and particular is often essential to the capacity of jurors to satisfy the
> obligations that the law places on them… Thus, the prosecution may fairly seek to
> place its evidence before the jurors, as much to tell a story of guiltiness as to support
> an inference of guilt, to convince the jurors that a guilty verdict would be morally
> reasonable as much as to point to the discrete elements of a defendant's legal fault.

519 U.S. at 187; *see also United States v. Caldwell,* 586 F.3d 338, 343 (5ᵗʰ Cir. 2009) (discussing

the impact of evidence as discussed in *Old Chief).*

 *Caldwell* is particularly salient because of its stark similarity to the case before this Court.

*Caldwell* involved child pornography and agreed stipulations. *Id.* at 343.   In *Caldwell*, the parties

stipulated to 17 videos containing child pornography. *Id.* at 342. At trial, the district court allowed

the United States to play 3 clips of the videos for the jury, over defense objection.  On appeal, the

Fifth Circuit found no abuse of discretion in playing the videos. *Id* at 349.  The *Caldwell* Court

distinguished *Old Chief*, explaining that because child pornography is "graphic evidence that has

force beyond simple linear schemes of reasoning….It provides the flesh and blood for the jury to

see the exploitation of children." *Id* at 343. The Fifth Circuit also stated that "[j]urors have

expectations as to the narrative that will unfold in the courtroom. If those expectations are not met,

jurors may very well punish the party who disappoints by drawing a negative inference." *Id.*  For

example, in a drug possession/distribution case, the jury would expect to see drugs, paraphernalia,

and currency.  In this case, the jury should expect to see allegedly obscene material, and the nature,

manner, and location in which the defendant operated and managed the website.

 As in *Caldwell*, the evidence proposed by the United States in this case goes beyond simple

"linear schemes of reasoning." Unlike the evidence of the nature of conviction in *Old Chief*, the

evidence proposed by the United States here goes towards more than just the element of proof of

mere status. The evidence proposed by the United States in this case assists the jury in putting

together the narrative and allows the United States to tell the story of guilt as well as support any

inferences of guilt.

For example, the United States' Exhibits 16A-Z are photos of the residence taken during the search warrant in this case.  These photos would allow the jury to follow the narrative of what took place in this investigation that led the parties to where they stand today.[1] Defendant also contends that evidence surrounding the income stream would confuse and mislead the jury, when in fact the opposite is true. The jury will hear from witnesses, and will read in ¶ 7 of the Stipulation that Defendant was running "Mr. Double" as a business. As such, they will expect to see business-related documents, evidence of the website's operation, and evidence of an income stream, such as those in Exhibits 18-23.

Therefore, the evidence proposed by the United States should be admitted. These forms of evidence are the very type envisioned by the Supreme Court in *Old Chief* and by the Fifth Circuit in *Caldwell*. Defendant's argument that the United States' exhibits are duplicative and therefore may violate Rule 403 is unsupported and the defense fails to cite any precedential support for its argument.  In fact, as proven *supra*, the Defendant's lone citation supports the United States' position.

**B.  Potential Abuse Against Children**

Defendant next argues that "[a]ny evidence or opinion that consuming works such as those at issue here leads people to act out in the real world is not relevant to the jury's determination of what the content of the images are, and whether the works are sexual, are offensive, or lack significant value." Nevertheless, Defendant's expert, Dr. David Ley, opined in his report, and presumably will testify, that "[r]eaders of [Story 1 by Baby Mangler] may experience decreased

---

[1] The Court should also note that the Defendant agrees in his motion that the jury would need to hear from the case agent as to the investigation. (Doc. 77 at 3).  The investigation would include the search warrant, and any evidence obtained or photographed that day.

risk of contact offending against children, per the research of Dr. Milton Diamond (University of Hawaii) and Dr. David Finkelhor (University of New Hampshire)." What is good for the goose is good for the gander. The United States does not intend to introduce any affirmative evidence that a person who reads one of these stories will invariably go act it out. But the United States certainly intends to robustly cross-examine Dr. Ley about his bald opinions that these stories actually *decrease* the risk of offending against children. Defendant cannot open that door and then preclude the United States from walking through it.

### C. Opinion Evidence

Defendant next argues that the United States should not be allowed to present opinion evidence regarding the third prong of the *Miller* test, namely whether the charged stories and drawings lack serious literary, artistic or scientific value. The United States has not noticed an opinion witness for this issue because the jury is perfectly capable of drawing its own conclusion about the value of a story that includes graphic descriptions of the sexual abuse of crying babies who bleed from the abuse.

### D. Extrinsic vs. Intrinsic Evidence

The United States has not noticed any extrinsic act evidence because all of the evidence the United States intends to introduce is intrinsic to the charged crimes. Rule 402 of the Federal Rules of Evidence provides that "all relevant evidence is admissible." Fed. R. Evid. 402. Relevant evidence is defined in Rule 401, as "[evidence that] has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. In summary, the Rule asks whether the evidence being introduced has a "tendency to make the existence" of a fact to be proved "more probable or less probable." Advisory Committee Notes Fed. R. Evid. 401. Thus, relevant evidence should be admitted unless

its "probative value is substantially outweighed by a danger of… unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The evidence the United States seeks to introduce is highly probative, relevant evidence. In order to convict Defendant of trafficking in obscene material, the United States must prove, among other things, that Defendant knew the stories and drawings involved sexually oriented material; the drawings depicted a minor; the stories and drawings appeal to a morbid, degrading or unhealthy interest in sex; *such appeal is to members of a deviant sexual group*; and that the stories and drawings lack serious literary, artistic and scientific value. As the Supreme Court has indicated, in *Ginzburg v. United States*, 383 U.S. 463, 470 (1966): "Where the purveyor's sole emphasis is on the sexually provocative aspects of his publications, that fact may be decisive in determination of obscenity."

The United States intends to introduce emails (Exhibit 29) and forum postings (Exhibit 31) from the Mr. Double website that demonstrate that the members, authors, and Defendant himself were members of a deviant sexual group. Indeed, the entirety of the Mr. Double website will be introduced as Exhibit 24 to help the jury understand the context of where the stories were posted to better understand that they are not an aberration on an otherwise respectable website that the community would find inoffensive. The website contained a chat forum where members and authors could post a topic, and others would comment on the topic. Those forum chats are critical to helping the jury understand the deviancy of those in the group to whom these stories would appeal. Similarly, Defendant operated from a unique email address and assigned unique email addresses to authors so that members/fans could communicate with the authors through the site. By issuing such email addresses to authors, Defendant could read and monitor every email between

authors and others who communicated with that author. Defendant also communicated with authors himself. Those emails also demonstrate the nature of the group, how closely connected they were, and how they were all focused on the same prurient interest. *See* Fed. R. Evid. 401. Thus, the proffered evidence is relevant and should be admitted at trial.

Not only is this evidence relevant and admissible pursuant to FRE 401, but such evidence is also admissible because it is inextricably intertwined with evidence that will be admitted to prove the offenses charged in the Second Superseding Indictment. "Evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the ["other"] act and the evidence concerning the crime charged are inextricably intertwined.'" *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987) (citing *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979)). The Ninth Circuit has held that other acts evidence that is inextricably intertwined with a charged offense is independently admissible and is exempt from the requirements of both Rule 404(b) as well as Rule 414. *See United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013) (discussing Rule 404(b)) (citing *United States v. Dorsey,* 677 F.3d 944, 951 (9th Cir.2012); *see also United States v. Johnson*, 26 F. App'x 624, 625 (9th Cir. 2001) (discussing Rule 414)). "Extrinsic evidence must be analyzed under Rule 404(b); intrinsic evidence need not be." *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010).

Evidence is considered inextricably intertwined when it is "necessary...to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Dorsey,* 677 F.3d at 951 (citing *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995)). The evidence the United States seeks to introduce establishes Defendant's long-term sexual attraction to minors and illustrates his ongoing efforts to obtain access to materials depicting the sexualization and sexual exploitation of young children. As such, this evidence is not only

highly probative, it is also necessary to offer the jury a "coherent and comprehensible story" regarding the motivating purpose behind Defendant's posting of comments to the Mr. Double forum.

Moreover, the evidence is intrinsic because it proves Defendant was successful in his quest to traffick in material that was intended to satisfy the never-ending thirst of this deviant sexual group. In other words, Defendant is charged with aiding and abetting the trafficking of these stories that appeal to a deviant sexual group, and this evidence from the forum posts and emails of that deviancy is quintessentially intrinsic to those charges and thus should be admitted as such.

### E. Spousal Privilege

The United States intends to call Sandra Arthur, Defendant's estranged wife, as a witness. They were married in Texas in 2004. Since Defendant's arrest on November 7, 2019, Mrs. Arthur has filed for legal separation from Defendant. Mrs. Arthur moved out of the marital residence and relocated to Hawaii. Mrs. Arthur is willing to testify about the following: Defendant's operation of the Mr. Double website; her knowledge of the website; her role in the Mr. Double website and the related businesses; the income earned from the Mr. Double website; the businesses Mr. Double, Inc., SC Prod., Inc. and AOK Contractors; Defendant's interactions with Mr. Double authors; and about Defendant's electronic devices. None of the proposed testimony by Mrs. Arthur is privileged.

Federal Rule of Evidence 501 provides that common law generally determines issues of evidentiary privilege. Fed. R. Evid. 501 ("The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court."); *see also United States v. Singleton*, 260 F.3d 1295, 1300 (11th Cir. 2001)

("The general issue of evidentiary privilege in criminal cases is governed by the first sentence of Rule 501 of the Federal Rules of Evidence . . . ."). Therefore, the question of marital privilege in federal criminal cases is governed by current federal common law.[2] *Trammel v. United States*, 445 U.S. 40, 47 (1980) (stating that by passing Federal Rule of Evidence 501, "Congress manifested an affirmative intention not to freeze the law of privilege" with the purpose of "provid[ing] courts with the flexibility to develop rules of privilege on a case-by-case basis"). There are currently two marital privileges recognized by the federal common law: (1) adverse spousal testimony privilege and (2) the marital communications privilege. *Singleton*, 260 F.3d at 1297; *United States v. Entrekin*, 624 F.2d 597, 598 (5th Cir. 1980).

The adverse spousal testimony privilege protects the witness-spouse from being compelled to testify adversely against the defendant-spouse about evidence of criminal acts, including non-confidential communications and matters that occurred prior to the marriage. *Trammel*, 445 U.S. at 49; *Entrekin*, 624 F.2d at 598. The adverse spousal testimony privilege is seemingly broad, but it is not absolute and has important limitations. *See United States v. Cameron*, 556 F.2d 752, 755 (5th Cir. 1977); *see also Trammel*, 445 U.S. at 52; *Singleton*, 260 F.3d at 1297. First, this privilege may **only** be asserted by the witness-spouse. *Trammel*, 445 U.S. at 53; *Singleton*, 260 F.3d at 1297. Second, it should only be applied where, under the circumstances of the case, the purpose of the privilege would be served. *Trammel*, 445 U.S. at 52. Because of this, the privilege does not exist, even for the witness-spouse, if the marriage is no longer viable or is "moribund." *Cameron*, 556 U.S. at 756 (finding no adverse spousal testimony privilege existed ". . . where, as here, the spouse was called to testify only as to objective facts, with no questions allowed as to any communication

---

[2] Nonetheless, federal courts construe the marital privileges narrowly because evidentiary privileges obstruct the truth-seeking process. *United States v. Nixon*, 418 U.S. 683, 710 (1974); *Singleton*, 260 F.3d at 1299.

between the spouses, and where the evidence supported a finding that the marriage was no longer viable and its members had little hope or desire for reconciliation, reason, experience and common sense indicate that the traditional policy reasons for the privilege are non-existent").

The marital communications privilege, by contrast, bars the disclosure of confidential communications within the marriage. *Trammel*, 445 U.S. at 49; *Entrekin*, 624 F.2d at 598. "The privilege, generally, extends only to utterances, and not to acts." *Pereira v. United States*, 347 U.S. 1, 6 (1954). Unlike the adverse spousal testimony privilege, the marital communications privilege can be invoked by either spouse. *Singleton*, 260 F.3d at 1298 n.2 ("The marital communication privilege, when available, can be asserted by a defendant to prevent his or her spouse from testifying concerning the communication and to exclude related evidence.") Several exceptions to the marital communications privilege exist, including communications between spouses about crimes in which they jointly participated. *See United States v. Ramirez*, 145 F.3d 345, 355 (5th Cir. 1998); *United States v. Chagra*, 754 F.2d 1181, 1182 (5th Cir. 1985); *United States v. Miller*, 588n F.3d 897, 904-905 (5th Cir. 2009). So long as the testimony concerns the joint criminal activity, the exception applies regardless of whether the testifying spouse has been charged with a crime. *See Ramirez*, 145 F.3d at 355. Texas has codified this exception. TX R. EVID. 504(a)(4)(A) ("This privilege does not apply…if the communication is made—wholly or partially—to enable or aid anyone to commit or plan to commit a crime or fraud.")

Here, Defendant cannot invoke either the adverse spousal testimony privilege or the marital communications privilege to prevent Mrs. Arthur from testifying. Because Mrs. Arthur is willing to testify, Defendant cannot preclude her adverse spousal testimony. Moreover, even if Mrs. Arthur became unwilling to testify at trial, her testimony could be compelled because their marriage is no longer viable. Defendant cannot invoke the marital communications privilege

because Mrs. Arthur is not testifying to any confidential communications.  Even if Mrs. Arthur were to testify to any confidential communications, the exception would apply because the communications concern joint criminal activity involving the operation of the Mr. Double website. The Court previously granted immunity to Mrs. Arthur, and counsel was appointed to represent her, which reflects that Mrs. Arthur could have been charged for her role in the Mr. Double website.    In short, Defendant cannot prevent Mrs. Arthur from testifying about Defendant's operation of the Mr. Double website; her knowledge of the website; her role in the Mr. Double website and the related businesses; the income earned from the Mr. Double website; the businesses Mr. Double, Inc., SC Prod., Inc. and AOK Contractors; Defendant's interactions with Mr. Double authors; and about Defendant's electronic devices.

### 3.  **CONCLUSION**

For the foregoing reasons, the United States requests that this Court deny Defendant's Motion in Limine.

Respectfully submitted,

GREGG N. SOFER
United States Attorney

/s/
AUSTIN M. BERRY
Trial Attorney
Child Exploitation & Obscenity Section
601 N. Loraine, Ste. 398
Midland, Texas 79701-4310
Austin.Berry2@usdoj.gov

/s/ _____

MONICA MORRISON
Assistant United States Attorney
Idaho Bar No. 7346_
110 9th Ave. South, Suite A961
Nashville, Tennessee 37203
(615) 736-5151(phone)
Monica.morrison@usdoj.gov


/s/ _____

FIDEL ESPARZA III
Assistant United States Attorney
State Bar No. 24073776
601 NW Loop 410, Ste. 600
San Antonio, Texas 78216
(210) 384-7026
(210) 384-7045
Fidel.esparza@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that on this 14th day of January, 2021, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will transmit notification of such to the following CM/ECF participants:

Lane Andrew Haygood
Haygood Law Firm
522 North Grant Ave.
Odessa, TX 79765
Email: lane@haygoodlawfirm.com

Mark William Bennett
917 Franklin St.
4th Floor
Houston, TX 77002
Email: mb@ivi3.com
*(Attorneys for Thomas Alan Arthur)*

            _____/s/_____
            AUSTIN M. BERRY
            Trial Attorney

            _____/s/_____
            MONICA MORRISON
            Assistant United States Attorney

            _____/s/_____
            FIDEL ESPARZA III
            Assistant United States Attorney