**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | | |
| **v.** | | **4:19-cr-00774-DC** |
| **THOMAS ALAN ARTHUR,**<br>**Defendant** | | |

**DEFENDANT THOMAS ALAN ARTHUR'S**
**MOTION FOR POST-VERDICT JUDGMENT OF ACQUITTAL**

**TO THE HONORABLE DAVID COUNTS:**

The Defendant in the above styled and numbered cause, Thomas Alan Arthur, under Rule 29(c) of the Federal Rules of Criminal Procedure, respectfully moves the Court for a judgment acquitting the Defendant of all Counts.  In support of this motion, Thomas Alan Arthur would show the Court as follows:

**I.**

Federal Rule of Criminal Procedure 29(c) states that a defendant may move for a judgment of acquittal, or renew such motion, within 14 days after a guilty verdict or after the Court discharges the jury, whichever is later, or within any other time the Court sets during the 14-day period.

The verdict of the jury is manifestly against the evidence presented at trial of the cause.

The government has failed to prove the essential elements of all Counts alleged against the Defendant beyond a reasonable doubt.  Specifically, the Government failed to prove that the materials charged in this case were actually obscene, for the reasons stated in the attached memorandum of law.

**II.**

A hearing on this motion is respectfully requested.

**III.**

Counsel for the Defendant conferred with Assistant United States Attorney Austin M. Berry about this motion on February 3, 2021.  The government is opposed to this motion.  There are no points of agreement between the defense and the government.

Thomas Alan Arthur prays that the Court enter a Judgment of Acquittal of all Counts.

Respectfully Submitted,


/s/ Mark Bennett
**MARK BENNETT**
Attorney in Charge
Texas State Bar Number:  00792970
**BENNETT & BENNETT**
917 Franklin Street
Houston, TX 77002
Telephone:  (713) 224.1747


/s/ Lane Haygood
**LANE A. HAYGOOD**
Texas State Bar Number:  24066670
**HAYGOOD LAW FIRM**
522 N. Grant Ave.
Odessa, Texas 79761
Telephone:  (432) 337.8514
Fax:  (432) 225.1062

Attorneys for the Defendant,
Thomas Alan Arthur

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the Defendant Thomas Alan Arthur's Motion for Post-verdict Judgment of Acquittal was electronically served to Austin M. Berry, Assistant United States Attorney on the 4th day of February, 2021.

/s/ Lane Haygood
**LANE A. HAYGOOD**
Attorney for Defendant

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

UNITED STATES OF AMERICA

v.                                                          4:19-cr-00774-DC

THOMAS ALAN ARTHUR,
Defendant

MEMORANDUM IN SUPPORT OF DEFENDANT THOMAS ALAN ARTHUR'S
MOTION FOR POST-VERDICT JUDGMENT OF ACQUITTAL

The Defendant, through counsel, submits this Memorandum in Support of Defendant's

Motion for Post-Verdict Judgment of Acquittal.

## FACTS

The Government charged Mr. Arthur with possessing with intent to distribute five text-

only stories claimed to be obscene in violation of 18 U.S.C. § 1462(a) (Counts 2, 3, 4, 5, and 6)

and three drawings claimed to be obscene in violation of 18 U.S.C. § 1466A(a)(1) (Counts 1, 8,

and 9). The remaining count, Count 7, was for engaging in the business of selling or transferring

obscene matter in violation of 18 U.S.C. § 1466A (Doc. 54) and included, as its basis, the five

charged stories, three charged drawings, and two additional stories allegedly written by Mr.

Arthur (id). The jury found Mr. Arthur guilty on all nine counts (Doc. 105).

## ARGUMENT

### A defendant may raise an as-applied challenge in a post-verdict motion.

A defendant may raise an as-applied challenge via a post-verdict motion for acquittal.[1] As

distinct from facial challenges, as-applied challenges assert that a given statute's application to

---

[1] *United States v. Hardeman,* 135 F.3d 140 (1997).

the defendant's case violates the Constitution. When challenging a statute that has a plainly legitimate sweep, the as-applied challenge is the proper procedural vehicle and will not be ripe until after enforcement is sought.[2] However, the underlying standard which tests the constitutionality of the statute is not meaningfully different between an as-applied or a facial challenge.[3] Each of the statutes under which Mr. Arthur has been convicted has been held to be facially constitutional: (1) 18 U.S.C. § 1462[4]; (2) 18 U.S.C. § 1466[5]; and 18 U.S.C. § 1466A[6]. However, all of these statutes, in order to be facially constitutional, import the three-pronged test from *Miller v. California*[7]; they must, because the failure to do so would render the statutes unconstitutional.[8]

Thus, the question that confronts this Court is whether the challenged material actually constitutes obscenity.[9] Like the Supreme Court in *Cohen v. California*,[10] the conviction in this case rests solely upon 'speech,' not upon 'any separately identifiable conduct.' While obscene material may be constitutionally forbidden, the question of whether the material is actually obscene is one that can only be answered, in the final analysis, by five of the nine members of the United States Supreme Court. *See Paris Adult Theater I v. Slaton*, 413 U.S. 49, 92-93 (1973).

In order to appropriately analyze the matter, this Court must separate the charges into three categories: (1) text-only obscenity (Counts 2, 3, 4, 5, and 6, plus the two additional stories

---

[2] *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449-50 (2008).
[3] *Citizens United v. Federal Election Com'n*, 558 U.S. 310, 335-36 (2010).
[4] *United States v. Groner*, 494 F.2d 499 (5th Cir. 1974).
[5] *United States v. Skinner*, 25 F.3d 1314 (6th Cir. 1994).
[6] *United States b. Buie*, 946 F.3d 443 (8th Cir. 2019).
[7] *Miller v. California*, 413 U.S. 15 (1973).
[8] *Buie*, 946 F.3d at 445-46.
[9] *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 834 n.3 (2000) (Scalia, J. dissenting).
[10] 403 U.S. 15, 18 (1971)

under Count 7); (2) pictorial obscenity (Counts 1, 8, and 9), and (3) the final Count for engaging in the business of selling obscene materials.

### Text-only obscene materials are unique; the Government failed to prove that the text-only materials in this case lack Constitutional protection.

With regard to text-only obscenity, the prosecution for such has a notable history. The first formal test for text-only obscenity arose from an English case, *The Queen v. Hicklin*.[11] In this Victorian antique, the Queen's court pronounced the following test: "whether the tendency of the matter charged as obscenity is to deprave and corrupt those whose minds are open to such immoral influences, and into whose hands a publication of this sort may fall."[12]

It was not until *United States v. Bennett*, however, that the United States imported the *Hicklin* test.[13] Around the turn of the century, however, no less an esteemed justice than Learned Hand stated his reservation to the prosecution for text-only obscenity:

> I question whether in the end men will regard that as obscene which is honestly relevant to the adequate expression of innocent ideas, and whether they will not believe that truth and beauty are too precious to society at large to be mutilated in the interests of those most likely to pervert them to base uses. Indeed, it hardly seems likely that we are even to-day so lukewarm in our interest in letters or serious discussion as to be content to reduce our treatment of sex to the standard of a child's library in the supposed interest of a salacious few, or that shame will for long prevent us from adequate portrayal of some of the most serious and beautiful sides of human nature.[14]

Between 1870 and 1930, the clash between American puritanism and erotic fiction reached a fever pitch.[15] Challenged works included Tolstoy's *The Kreutzer Sonata*; James's *Tom Jones*; Boccaccio's *Decameron*; Rabelais' *Gargantua and Pantagruel*; Ovid's *Art of Love*;

---

[11] 3 L.R.-Q.B. 360 (1868).
[12] *Hicklin*, 3 L.R.-Q.B. 360 at 371.
[13] 24 F.Cas. 1093 (C.C.S.D.N.Y. 1879).
[14] *United States v. Kennerly*, 209 F. 119, 120-21 (S.D.N.Y. 1913).
[15] Frederick Schauer, *The Law of Obscenity* 13 (1976)

Voltaire's *La Pucelle*; Gautier's *Mademoiselle de Maupin*; Lewis's "Cantleman's Spring-Mate;" Dresier's *An American Tragedy*; D.H. Lawrence's *Lady Chatterly's Lover*; Joyce's *Ulysses*; and Miller's *Tropic of Cancer*. The fact that these works now find inclusion on libraries, bookshelves, and in college classes across the nation shows the growth, through the 20th century, of the realization that works which might otherwise scandalize or offend can contain within them serious artistic and literary value.

In 1973, the United States Supreme Court modernized obscenity jurisprudence by setting forth the famous, three-pronged *Miller* test: (1) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to a prurient interest in sex; (2) whether the average person, applying contemporary community standards, would find that the work depicts or describes sexual conduct in a patently offensive way; and (3) does the work, judged from an objective standpoint, lack serious artistic, literary, scientific, or political value?[16]

The United States Supreme Court has long recognized that there is a qualitative differenced between recording actual human beings and the creation of fantasy images, whether through depiction or description.[17] Recognizing this, Congress, in drafting 18 U.S.C. § 1462, codified the *Miller* test as a part of the statute.

In the companion case to *Miller*, *Kaplan v. California*,[18] the Court consider a book, "Suite 69," which was described as having "a plain cover and contain[ing] no pictures" that was made up "entirely of repetitive descriptions of physical sexual conduct, 'clinically' explicit and

---

[16] *Miller*, 413 U.S. at 24-25.
[17] *Free Speech Coalition v. Ashcroft*, 535 U.S. 234 (2002); *United States v. Williams*, 444 F.3d 1286 (11th Cir. 2006) (striking down a provision of the PROTECT Act).
[18] 413 U.S. 115 (1973)

offensive to the point of being nauseous" with "only the most tenuous 'plot'."[19] The Court noted that there is no distinction between the medium of expression in the determination of obscenity.[20] Nevertheless, each medium presents its own peculiar problems.[21] For example, in *Stanley v. Georgia*,[22] the United States Supreme Court held that the government could not forbid the possession of obscene matter within the privacy of one's home.[23] The Court found that one's home library should be free from state inquiry.[24]

In *United States v. Whorley*,[25] the Fourth Circuit wrestled with a case that is in many ways similar to the one at bar. In that case, the defendant engaged in a series of emails described as "engaging in fantasies on the internet of one person talking about their fantasy, and another asking questions about what they've done, what they haven't done."[26] Justice Gregory noted that such adult/child sexual interactions feature frequently in literature, from the writings of psychoanalyst Sigmund Freud to the literary works of Alice Walker (*The Color Purple*), William Faulkner (*Absalom, Absalom!*), Vladimir Nabokov (*Lolita*) and in popular films (again, *Lolita* and 1999's award-winning *American Beauty*). Justice Gregory notes that "the iconic books and movies above render unsustainable the claim that the writings describing sexual acts between children and adults, generated by fantasy, have no demonstrated socially redeeming artistic value."[27] In doing so, Justice Gregory argued, the Government criminalizes "the mere communication of

---

[19] *Id*. at 116-17
[20] *Id*. at 119.
[21] *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503 (1952).
[22] 394 U.S. 557 (1969)
[23] *Id*. at 568.
[24] *Id*. at 565.
[25] 550 F.3d 326 (4th Cir. 2008)
[26] *Id*. at 348 (Gregory, J., concurring)
[27] *Id*. at 349 (Gregory, J., concurring).

ideas."[28]

There is no doubt that the five indicted stories and the additional stories listed in the special interrogatory to Count 7 are of **lesser** literary quality than *Lolita* or *Tropic of Cancer*. No one argues that Mr. Thomas, and Mr. Whorley like him, possessed the strengths as a writer possessed by a Nabokov or D.H. Lawrence. But the question of constitutionality no more turns on the relative skill of the craftsman than it does whether the words are printed or electronic. All ideas, even those that are unorthodox, controversial, or hateful, have the full protection of the guaranties of the Constitution.[29] In order to have validly rejected this, the jury must have found beyond a reasonable doubt that there could be serious literary value in the challenged stories. As Justice Gregory noted, the only argument that such stories do not possess literary value, that they might "whet[] the appetites of pedophiles and encourage[] them to engage in illegal conduct" was rejected by the Supreme Court.[30]

Therefore, this Court should find that the text-only stories do not constitute obscenity within the meaning if 18 U.S.C. § 1462 because it cannot be proven that they lack serious artistic or literary value as written works. In order to make such a claim, the government would have, indeed **should** have to, prove the distinction between famous works of art which depict adult/child sexual conduct and the challenged stories, and such a distinction would have to rest on more than "some types of those stories are better than others." Otherwise, the rationale for holding that the statute is constitutional as-applied to the case at bar turns on an entirely subjective judgment about the quality of the work, and not some essential feature or property of

---

[28] *Id.* at 350.
[29] *Roth v. United States*, 354 U.S. 476, 484 (1957).
[30] *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002).

the challenged works. This Court should grant the motion for acquittal as to Counts 2, 3, 4, 5, and 6.

## The visual depictions at issue in this case do not depict "minors."

With regard to Counts 1, 8, and 9, Mr. Arthur argues that this Court should grant his motion for acquittal because the government failed to prove that the subjects depicted in the drawings were, or appeared to be, minors.

It is not required that the depiction at issue depict a "real" minor.[31] But how does one define whether a wholly fictional cartoon character is a "minor?"[32] While the statute may not be unconstitutionally vague in its construction, it can still be unconstitutional as applied to a particular defendant if there is no proof that the subject work actually depicts a minor. In *Whorley*, for example, the defendant never actually challenged that the images depicted minors; he only challenged whether they were obscene.[33] While it is uncontroversial that such depictions, like all visual depictions, **might** be obscene, the particular question in this case is whether the work depicts a minor in an obscene manner. The indictment in this case charged Mr. Arthur with violating 18 U.S.C. § 1466A(a)(1), which by its plain language must "depict[] a minor engaging in sexually explicit conduct" and such depiction bust be "obscene." Thus, like 18 U.S.C. § 1462, this statute must import the constitutional definition of obscenity from *Miller*.

In the case of *United States v. Schales*,[34] the defendant possessed images that included a "morphed" photograph of a "local minor girl with obscene pictures of a seven-year-old North

---

[31] *Whorley*, 550 F.3d at 335-36.
[32] *See United States v. Handley*, 564 F.Supp.2d 996, 1000-01 (S.D. Iowa 2008).
[33] *Whorley*, 550 F.3d at 336-37.
[34] 546 F.3d 965 (9th Cir. 2008).

Carolina girl."[35] These photographs were taken of actual minor children, and although they had been digitally manipulated so that the composite image was unrecognizable as a particular child, the detective in the case was still able to testify that a portion of the images were from a known series of child pornography images.[36] Likewise, in *United States v. Bowersox*,[37] the defendant soldier did not contest that the pictures at issue depicted minors, only that the minors in the drawings were not "real."[38] The Armed Forces Appellate Court held that 18 U.S.C. § 1466A(a)(1) did not require the depiction of a real minor.[39]

But the statute does require depiction of **a** minor. For example, in *United States v. Eychaner*,[40] the district court found it sufficient to prove that an image depicted a minor based on the "character's youthful looks, her hairstyle, and the relative size of the female character's mouth in relation to the male's penis." While the opinion of the Eastern District of Virginia district court obviously does not contain a copy of the image at issue, the description makes it sound similar to the image at issue in Count 8 of this case. However, while Mr. Arthur acknowledges that the jury **could have** found him guilty based on these factors, the question he now advances to this Court is whether, constitutionally, a conviction will stand when based on such factors, the difference between making a sufficiency argument and an as-applied challenge to the statute.

To the extent that 18 U.S.C. § 1466A(a)(1) purports to criminalize speech, that speech must be obscene. It is uncontroversial that obscene speech may be constitutionally forbidden;

---

[35] *Id.* at 974.
[36] *Id.* at 975.
[37] 72 M.J. 71, 74-75 (Armed Forces App. 2013).
[38] *Id.* at 74.
[39] *Id.*
[40] 326 F.Supp.3d 76, 89-90 (E.D. VA 2018).

obviously not all visual depictions of minors engaging in sexually explicit conduct may be forbidden; if so, every video store in America which sells a copy of *Lolita* or *American Beauty* has engaged in selling obscenity to an unwitting public who naively believes these classic, award-winning films are safe to view. It was incumbent upon the government to produce some evidence indicating that the subjects depicted in the challenged images were in fact minors, and that there was no social artistic value in the works. Had the Court not excluded Dr. Ley's testimony, Dr. Ley would have been able to testify about the comparable exhibits (also excluded by the Court but made a part of the record by offer of proof).

Justice Gregory, in his concurrence in *Whorley*, takes a different approach to the interpretation of 18 U.S.C. § 1466A(a)(1). He writes that he interprets "subsection (a)(1) to only criminalize material, including cartoons and drawings, that incorporates actual children, even if those children cannot be conclusively identified."[41] Even if the other cases such as *Eychaner* and *Bowersox*, *supra*, found that Japanese-style drawings (very much like those at issue in this case) can be obscene when they depict wholly-fictional minors, Justice Gregory's interpretation deserves consideration by this Court. The reason for this is that his textual argument is persuasive; the statute uses the term "persons" when talking about "persons of the same or opposite sex." "Person," Justice Gregory opines, must mean an actual human being with legal rights and duties.[42] Further, Justice Gregory writes that the condition imposed in 18 U.S.C. § 1466A(c), that the government need not prove that the minor depicted actually exists, is to alleviate the burden on prosecutors to prove the identity of the minor depicted, not to steer around the constitutional stumbling block imposed by the First Amendment against criminalizing

---

[41] *Whorley*, 550 F3d at 352 (Gregory, J. concurring).
[42] *Whorley*, 550 F.3d at 351 (Gregory, J., concurring).

fictional depictions of minors engaged in sexual contact with adults.[43] Finally, Justice Gregory states that the distinction between subsections (a)(1) and (a)(2) exists because (a)(1), with a less-onerous standard of what must be proven in order to make the image illegal, has the less-onerous standard because it has the additional burden of proving that "the conduct involves the abuse of real minors."[44] Justice Stuckey, writing in dissent in *Bowersox*, expressed similar concerns: "Where there is tension between a constitutional right and a statute, the constitution trumps."[45] Justice Stucky wrote that the provision that the depiction need not be of an extant minor could not save it from constitutional infirmity; while he "may not agree with [Bowersox's] choice of reading material," Bowersox was nevertheless "charged only with constitutionally protected conduct."[46]

These justices, writing in dissent and concurrence, express the same concern advanced by Mr. Arthur in this case: where and how can the line be drawn such that the plainly legitimate sweep of the statutes at issue does not catch within that sweep protected expression? This Court should err to the side of protecting individual liberty under the Constitution, and acquit Mr. Arthur of the charges in Counts 1, 8, and 9.

**Count 7 charges conduct that is only criminal if the conduct in the other charges is found to be criminal as well.**

Finally, this Court must turn to Count 7. It is an exercise in logic; if Thomas Alan Arthur did not violate 18 U.S.C. § 1462 and 18 U.S.C. § 1466A(a)(1) with the five charged stories plus the two additional ones found by the jury and the three images, then Mr. Arthur did not engage in the business of transporting or selling obscene material in violation of 18 U.S.C. § 1466.

---

[43] *Id.*
[44] *Whorley,* 550 F.3d at 352 (Gregory, J., concurring).
[45] *Bowersox*, 72 M.J. at 80 (Stuckey, J., dissenting).
[46] *Id.*

Therefore, if this Court believes that, based on any of the arguments presented herein, that the First Amendment must hold sway even past our revulsion and horror at the material presented in this case, then this Court must also acquit Mr. Arthur of the charges in Count 7, for the flow only as a consequence from a guilty finding on the remaining counts.

## CONCLUSION

For the reasons stated herein, Mr. Arthur prays that this Court enter a judgment of acquittal on all nine counts of the indictment.

Respectfully Submitted,

/s/ Mark Bennett

**MARK BENNETT**
Attorney in Charge
Texas State Bar Number:  00792970
**BENNETT & BENNETT**
917 Franklin Street
Houston, TX 77002
Telephone:  (713) 224.1747


/s/ Lane Haygood

**LANE A. HAYGOOD**
Texas State Bar Number:  24066670
**HAYGOOD LAW FIRM**
522 N. Grant Ave.
Odessa, Texas 79761
Telephone:  (432) 337.8514
Fax:  (432) 225.1062

Attorneys for the Defendant,
Thomas Alan Arthur

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                    4:19-cr-00074-DC

**THOMAS ALAN ARTHUR,**
**Defendant**

**ORDER ON DEFENDANT THOMAS ALAN ARTHUR'S**
**MOTION FOR POST-VERDICT JUDGMENT OF ACQUITTAL**

Defendant Thomas Alan Arthur's Motion for Post-Verdict Judgment of Acquittal is hereby:

_____        GRANTED

_____        DENIED

Signed in _____, Texas on this the _____ day of _____, 2021.

_____
**DAVID COUNTS**
United States District Judge

15