**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § | |
| **v.** | § § | **P:19-CR-00774-DC** |
| **(1) THOMAS ALAN ARTHUR,** *Defendant*. | § § § | |

## ORDER SUPPLEMENTING ORAL RULING

On January 19, 2021, the Court excluded the testimony of Defendant Thomas Alan Arthur's (Defendant) proposed expert witness, Dr. David Ley (Dr. Ley). The Court issued its ruling orally. This Order supplements the Court's oral ruling.

### I.   BACKGROUND

Defendant was charged with three counts of distribution and possession with intent to distribute obscene visual representations of the sexual abuse of children, in violation of 18 U.S.C. § 1466(a)(1), five counts of importation or transportation of obscene matters, in violation of 18 U.S.C. § 1462(a), and one count of engaging in the business of selling or transferring obscene matter, in violation of 18 U.S.C. § 1466. (Doc. 54). Prior to trial, the Government requested the opportunity to voir dire Dr. Ley, Defendant's proposed expert who was to testify on the third element of the obscenity test set forth by the Supreme Court in *Miller v. California*, 413 U.S. 15 (1973). (Doc. 62). Under the *Miller* test, the material is obscene if the jury determines (1) that the work appeals predominantly to prurient interest; (2) that it depicts or describes sexual conduct in a patently offensive way; and (3) that the material, taken as a whole, lacks serious literary, artistic, political, or scientific value. *See Miller*, 413 U.S. at 24–25. The Court granted the request and conducted a *Daubert* hearing during a pretrial hearing.

After careful consideration of the parties' arguments and Dr. Ley's testimony, the Court ruled that Dr. Ley was not qualified to provide testimony regarding the artistic, literary, political, or scientific value of the material charged in the Second Superseding Indictment. The Court also found Dr. Ley's testimony would only confuse the jury and that the methodology he used to evaluate the material was not sufficiently reliable. The Court now supplements its oral ruling with this Order.

## II.   LEGAL STANDARD

The admission of testimony by an expert witness is governed by Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–92 (1993) (citing Fed. R. Evid. 702). Rule 702 provides that expert testimony should be admitted if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Further, the testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods" that an expert "has reliably applied . . . to the facts of the case." *Id.* at 702(b)–(d).

When presented with a proffer of expert testimony, the judge must first determine whether the expert is qualified as an expert. The Court must be "assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). "As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function. After that, qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity." *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded by statute on other grounds*.

Once the expert is deemed qualified, the Court must determine the admissibility of the expert testimony. *See Herrera v. Werner Enters., Inc.*, No. SA-14-CV-385-XR, 2015 WL 126794443, at *1 (W.D. Tex. Sept. 28, 2015). In *Daubert v. Merrell Dow Pharm., Inc.*, the Supreme Court announced a list of non-exclusive factors judges should consider when exercising their gatekeeping function. 509 U.S. at 593–94; *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). The objective of *Daubert*'s gatekeeping function "is to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Those factors are:

> 1. whether the scientific theory or technique can be and has been tested;
> 2. whether the scientific theory or technique has been subjected to peer review and publication;
> 3. the known or potential rate of error;
> 4. the existence and maintenance of standards controlling the technique's operation; and
> 5. whether the theory or technique has been generally accepted within the scientific community.

*Daubert*, 509 U.S. at 592–93. The reliability inquiry requires an "assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* The *Daubert* factors should be used when "they are a reasonable measure of the reliability of expert testimony." *Kumho Tire Co.*, 526 U.S. at 152. In a case where the factors are not applicable, "the relevant reliability concerns may focus upon personal knowledge or experience." *Id.* at 150.

The party seeking the admission of an expert's testimony has the burden of proof to show by a preponderance of the evidence the testimony is admissible. *See Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987) (determining preponderance of evidence standard applies to preliminary questions under Rule 104(a)). "The proponent need not prove to the judge that the

expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore*, 151 F.3d at 276.  A judge, as gatekeeper, has considerable leeway in deciding how to determine whether a particular expert's testimony is reliable.  *Kumho Tire Co.*, 526 U.S. at 152. The test for reliability is a "flexible one." *Daubert*, 509 U.S. at 594; *Hicks*, 389 F.3d at 525.  "Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission."  *Daubert*, 509 U.S. at 594–95.  Specific focus should be placed on the methods and principles, and not on the conclusions generated.  *Id.* at 595.  Further, the proponent of expert testimony must establish that the testimony is relevant and will "assist 'the trier of fact to understand the evidence or to determine a fact in issue.'"  *Id.* at 591 (quoting Fed. R. Evid. 702(a)).

### III.  DISCUSSION

In *Paris Adult Theatre I v. Slaton*, the Supreme Court noted that the subject of "obscenity" "is not a subject that lends itself to the traditional use of expert testimony." 413 U.S. 49, 56 n.6 (1973). Rather, the material itself is "the best evidence of what [it] represents." *Id.* at 56. Typically, expert testimony is provided to help jurors understand "what they otherwise could not understand." *Id.* at 56 n.6 (citation omitted). "No such assistance is needed by jurors in obscenity cases; indeed the 'expert witness' practices employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony." *Id.* (citation omitted). District courts retain "wide discretion" in obscenity trials to admit or exclude evidence, and "this is particularly true in the case of expert testimony." *See Hamling v. United States*, 418 U.S. 87, 108 (1974) (citations omitted).

In the instant case, Defendant sought to introduce Dr. Ley as an expert to establish that the material charged did not lack serious literary, artistic, political, or scientific value. The basis

for Dr. Ley's opinion was his practice treating patients, review of publications, and training. Dr. Ley is a licensed clinical psychologist. He is licensed in the states of New Mexico and South Carolina. Dr. Ley has a master's degree in psychology and a doctoral degree in clinical psychology, both from the University of New Mexico. He is a Certified Sex Therapist and Supervisor of Sex Therapists. Dr. Ley has published three books discussing sexuality. At the hearing, Dr. Ley testified that he is the Executive Director of a mental health nonprofit in Albuquerque, New Mexico, and that, on the side, he is a writer and sex therapist. He also testified he does forensic work surrounding sexuality issues.

### A. Qualifications

As noted immediately above, Defendant did not establish that Dr. Ley has special knowledge, skill, experience, training, or education in the fields of art, literature, or politics. Dr. Ley testified that he does not have a degree in art, literature, or political science and that he has not published a single article or given a single lecture in the above-listed fields. Accordingly, the Court ruled Dr. Ley was not qualified to testify as to the serious artistic, literary, or political value of the material charged.

Additionally, Dr. Ley testified he reviewed scientific literature containing an analysis of issues related to child pornography and written erotica as it relates to individuals who express a sexual interest in children and pedophilia. Further, he testified that the scientific material he reviewed is commonly accepted in the field of sex therapy. However, merely reviewing scientific literature in an area outside his field as a clinical psychologist does "not make [Dr. Ley] more qualified to testify as an expert . . . than a lay person who read the same articles." *See Newton v. Roche Labs., Inc.*, 243 F. Supp. 2d 672, 678 (W.D. Tex. 2002) (quoting *United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999)). Accordingly, Dr. Ley's review of scientific literature does

not render him an expert on the serious scientific value of the material charged in this case. *Id.*; *see also Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").

Dr. Ley also testified that he trained other psychologists on the *history* of sexuality literature and the role of erotic drawings and pornography in treatment. Further, Dr. Ley testified that he trained mental health therapists on how to address sexuality issues in their clinical practice, and that such training included discussions about the history of sexuality literature and the role of drawings and pornography in treatment. However, such training, at most, establishes Dr. Ley has some insight as to the historical significance or clinical use of "pornography" and "erotic drawings," not that he is qualified to testify as an expert on the serious scientific value of depictions of the sexual abuse of babies and/or children as such material differs vastly from "pornography" and "erotic drawings." *See Huss*, 571 F.3d at 452 (explaining the exclusion of an expert is warranted when he or she is not qualified to testify on a given subject). Accordingly, the Court also found Dr. Ley was not qualified to testify regarding the material's serious scientific value.

### B. Admissibility of Dr. Ley's Testimony

As Dr. Ley is not an expert in the fields of art, literature, or politics, and he is not qualified to testify on the serious scientific value of the material specifically charged, the Court finds that any opinion as to the material's serious artistic, literary, political, or scientific value would be unreliable.

Dr. Ley specifically admitted he did not have any expertise in politics. Accordingly, he was not qualified to provide testimony as to the political value of the works charged and any

opinion concerning their serious political value would be unreliable and highly subjective. *See* Fed. R. Evid. 702 advisory committee's note, 2000 amendments ("[The] more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable.").

Moreover, even if Dr. Ley was qualified to testify as to the serious literary value of the material based on his training on the history of sexuality literature and the books[1] he published, the Court ruled Defendant failed to establish that Dr. Ley's opinion as to the literary value of the material is reliable. First, Dr. Ley testified he compared the material charged with erotic literature he uses in his training and that his professional opinion was based on the research of others not on anything he had written academically. Again, merely because Dr. Ley reviewed literature in an area outside his field of clinical psychology does not render him qualified to testify as an expert, and it casts doubt as to the reliability of the opinions he formed based on material he reviewed for purposes of creating his report. Further, although Dr. Ley has given lectures and led trainings on the manner of treating individuals with sexuality issues, none specifically focused on the literary value of the type of material charged in this case—the sexual abuse of babies and/or children. In addition, such training focused on the use of the material to treat patients, not on the value of the material outside of treatment. Likewise, Dr. Ley's opinion that the charged stories could be written or read by victims of sexual abuse attempting to depict or better understand their own experiences expresses the material's potential psychological value as opposed to its serious literary value. The Court also finds Dr. Ley's opinion regarding the literary value of the material is rendered uncertain by his statement that the full literary, scientific, and artistic value of the stories and material charged cannot be determined without

---

1. The Court notes that the term "literary" is defined as follows: "Of, relating to, or involving literature *or other written forms of expression*." *See Literary*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).

consideration of the larger context within which they were viewed by the consumer.[2] Finally, any alleged literary evaluation appeared, to the Court, highly subjective and not sufficiently detailed.[3] In sum, the proposed testimony on the alleged serious literary value of the work was not based on a reliable methodology and would only serve to confuse the jury.

Similarly, Defendant failed to meet his burden of demonstrating that the methodology underlying Dr. Ley's opinion regarding the serious artistic value of the material was reliable and would truly assist the jury in evaluating that the serious artistic value of the material charged. Dr. Ley does not have a background in art, much less expertise in the field. Although he uses art in his clinical practice and his published works, nothing in his background suggests that his reliance on art is derived from his training, education, or other specific expertise. Accordingly, any opinion would be highly unreliable and subjective. Further, Dr. Ley did not articulate the artistic value of the material relevant to this case other than to explain how such art is used to treat patients (specifically, it helps him understand the mind of the consumer), which refers to a clinical use of art. Dr. Ley also failed to explain how he evaluated the serious artistic value of the work charged in this case other than by comparing it to similar work. Even then, he did not explain how measuring the material against other work led him to conclude that the material charged has serious artistic value, nor did he indicate that others in his field have reviewed and

---

2. Dr. Ley reviewed the stories and drawings separately, not in the context of the website in which they were presented. When questioned regarding his opinion that the "full value" of the stories and drawings could not be determined without also reviewing the context in which they were presented to the viewer, Dr. Ley reiterated that the "full value" could not be determined but that this did not mean that he could not determine "any value."

3. When the Court asked Dr. Ley whether he believed all stories and drawings have literary value, Dr. Ley responded by stating that, "as a psychologist and a scientist," stories and drawings hold tremendous value because they help him understand the patient. Again, Dr. Ley refers to the clinical use of the material and is clearly unable to articulate a value attributable to the stories and drawings that is not clinical. This is further evidenced by Dr. Ley's answer to the Court's questions regarding how one determines whether a story lacks literary value. Dr. Ley responded, "You know, I'm stronger in saying that all such material has some scientific value." He continued by giving a subjective method of determining whether a story has serious literary value.

considered the depiction of the sexual abuse of babies and/or children to contain serious artistic value.

Finally, as to the scientific value of the material charged, Dr. Ley testified that the material helped him understand the mind of the person viewing the material. However, Dr. Ley also testified that viewing the material in the context in which it was presented to the consumer provides a better understanding than merely viewing the exhibits in the manner he reviewed them. Thus, his opinion regarding the scientific value of the material charged was placed in question. And, although Dr. Ley has led trainings and lectures in which he discusses treatment for persons with a wide range of sexuality issues and mental health, he testified that none of those trainings or lectures focused *primarily* on the use of the type of material charged in this case—the depiction of the sexual of abuse of babies and/or children. He also testified that he is not aware of any clinician who prescribes, or has ever prescribed, the type of material charged in this case to their patients as treatment. Neither has *he* prescribed the reading of the type of material charged in this case. In sum, there was no evidence supporting the reliability of Dr. Ley's assertion that the material charged in this case has serious scientific value.

## IV. CONCLUSION

For the reasons expressed at the pretrial hearing and those included in this Order, the Court **EXCLUDED** the testimony of Dr. Ley.

It is so **ORDERED**.

SIGNED this 10th day of February, 2021.

                                                              _____
                                                              DAVID COUNTS
                                                              UNITED STATES DISTRICT JUDGE