UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                Plaintiff,<br><br>V.<br><br>THOMAS ALAN ARTHUR,<br><br>                                Defendant. | CRIMINAL NO. P:19-CR-774 |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
POST-TRIAL MOTION FOR JUDGMENT OF ACQUITTAL**

COMES NOW the United States of America by and through the undersigned Trial Attorney and files this response in opposition to Defendant's Post-Trial Motion for Judgment of Acquittal (Doc. No. 110) filed on February 4, 2021.

The restrictions in Sections 1462, 1466A(a)(1), and 1466 of Title 18 of the U.S. Code on obscene material are neither unconstitutionally overbroad nor vague, facially or as applied to Defendant. Defendant was charged and convicted of knowingly distributing via the internet obscene writings and drawings depicting minors engaged in sexually explicit conduct. Defendant was also charged and convicted of engaging in a business to transmit via the internet obscene writings and drawings depicting minors engaged in sexually explicit conduct. All of his arguments fail, and this Court should deny Defendant's motion for judgment of acquittal.

**ARGUMENT**

    **I.**    **18 U.S.C. § 1462 is constitutional as applied to Defendant**

Defendant acknowledges that all the statutes that he was convicted of violating are facially constitutional. (Def.'s Br. at 5. (citing cases holding each statute constitutional)). Instead of a facial challenge, Defendant argues that 18 U.S.C. § 1462 (Counts 2, 3, 4, 5, 6) is unconstitutional as applied to him because the rationale for determining the constitutionality "turns on an entirely subjective

judgment about the quality of the work, and not some essential feature or property of challenged works." (Def.'s Br. at 9.) Defendant baldly declares that "it *cannot* be proven that [the text-only stories] lack serious artistic or literary value as written works." (Def's Br. at 9 (emphasis added).) Defendant then asserts that the *only* way to prove the works lack serious value is to "prove the distinction between famous works of art which depict adult/child sexual conduct and the challenged stories." (Def.'s Br. at 9.) Defendant is wrong and his motion should be denied.

In *Kaplan v. California*, 413 U.S. 115 (1973), a case decided the same day as *Miller* and *Paris Adult Theatre I*, the Supreme Court declared that "[t]his case squarely presents the issue of whether expression by words alone can be legally 'obscene' in the sense of being unprotected by the First Amendment." *Kaplan*, 413 U.S. at 118. The Supreme Court further observed that "[w]hen the [Supreme] Court declared that obscenity is not a form of expression protected by the First Amendment, no distinction was made as to the medium of the expression." *Id*. at 118-19. Indeed, the *Kaplan* Court noted that:

> A book seems to have a different and preferred place in our hierarchy of values, and so it should be. But this generalization, like so many, is qualified by the book's content. As with pictures, films, paintings, drawings, and engravings, both oral utterance and the printed word have First Amendment protection until they collide with the long-settled position of this Court that obscenity is not protected by the Constitution.

*Id*. at 119-20 (citing *Miller v. California*, 413 U. S. 15, 23-25 (1973); *Roth v. United States*, 354 U.S. 476, 483-85 (1957)). The *Kaplan* Court ultimately held that the evidence was sufficient "as a matter of federal constitutional law" to support the conviction.

Here, Defendant's argument that "it cannot be proven that [the text-only stories] lack serious artistic or literary value as written works," (Def's Br. at 9), ignores the holding in *Kaplan* that a text-only material can be obscene and if such, it is not protected by the First Amendment. Defendant cites nothing to explain why it is impossible—factually or legally—to prove the stories from the Mr. Double website lack serious value. Indeed, the book in *Kaplan* was:

> made up entirely of repetitive descriptions of physical, sexual conduct, 'clinically' explicit and offensive to the point of being nauseous; there is only the most tenuous

> 'plot.' Almost every conceivable variety of sexual contact, homosexual and heterosexual, is described. Whether one samples every 5th, 10th, or 20th page, beginning at any point or page at random, the content is unvarying.

*Kaplan*, 413 U.S. at 116-17. Similarly, here, the charged stories from Defendant's website were each replete with horrific descriptions of infants and toddlers being raped, tortured, and murdered for the sexual satisfaction of the stories' antagonists. One of the stories graphically described aborting a near-term baby in utero and then using the baby as a "condom" while raping the mother.

It is certainly within the jury's ability to conclude that this material lacks serious value without any expert testimony either way. Indeed, the Supreme Court made clear in *Paris Adult Theatre I v. Slaton*, 413 U.S. 49 (1973) that there is no requirement for "expert affirmative evidence that the materials were obscene when the materials themselves were actually placed in evidence" because the materials, "are the best evidence of what they represent." *Paris*, 413 U.S. at 56. Thus, to the extent Defendant argues that lack of serious value "cannot" be proven, he ignores *Kaplan* and *Paris Adult Theatre I*, which both make clear that text-only materials presented to the jury without expert testimony can be sufficient for proof beyond a reasonable doubt that the materials lack serious value.

Furthermore, with regard to Defendant's argument that the constitutionality "turns on an entirely subjective judgment about the quality of the work, and not some essential feature or property of challenged works," (Def.'s Br. at 9), that dichotomy is false because it assumes that the subjective judgment about the quality of the work renders such judgment inherently unconstitutional. But the jury is tasked with precisely that job under *Miller*: assessing whether the challenged work lacks serious value. All value judgments are subjective. In an obscenity case, the value judgments are going to be based upon a particular jury's assessment of the reasonable person standard with regard to literary and artistic value of the specific materials that jury is charged with assessing. Such subjective value assessments are an integral part of our jury system. Defendant's complaint about the subjectivity is nothing more than sour grapes after confidently reaching his own subjective conclusion that the same materials were not obscene under the law, and profiting off such subjective assessment for more

than 25 years.

Regardless, such "subjective judgment versus essential feature" dichotomy does not render the statute unconstitutional as applied to him. Indeed, the *Miller* standard requires the jury to draw its own conclusion based upon community standards for the first two prongs (prurient interest and patently offensive) and the reasonable person standard for the third prong (literary/artistic value). The "essential feature" of the charged materials is that it (1) appeals to the prurient interest; (2) is patently offensive; and (3) lacks serious value. To the extent Defendant is suggesting that there need be some objective standard, *Miller* provides that objectivity with its three prongs.

To the extent Defendant believes that something else is required, he has failed to articulate any basis in law or logic as to why § 1462, as applied to him, is unconstitutional. Indeed, the Supreme Court has made it clear that "[w]henever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the criminal law to make him take the risk." *Hamling*, 418 U.S. 87, 124 (1974) (*citing United States v. Wurzbach*, 280 U.S. 396, 399, (1930)); *see also Polykoff v. Collins*, 816 F.2d 1326, 1340 (9th Cir. 1987) ("those who conduct their affairs close to the boundaries of proscribed activity necessarily incur some risks"). Defendant took that risk every day for 25 years. A jury of his peers, pulled from the community in which he lives, resoundingly announced that they unanimously concluded beyond a reasonable doubt that his risk assessment was wrong. Such decision does not render the statute unconstitutional in its application to Defendant; it renders Defendant's risk imprudent and his actions illegal.

Defendant's argument relies almost exclusively on the dissent in *United States v. Whorley*, 550 F.3d 326 (4th Cir. 2008), which concluded that "purely textual e-mails discussing the child sex fantasies of consenting adults is protected speech" and thus application of § 1462 to that defendant violated the First Amendment. *Whorley*, 550 F.3d at 343 (dissent). The dissent tacitly acknowledged

the Supreme Court's holding in *Kaplan* that words can be obscene.[1] *See Whorley*, 550 F.3d at 348 (dissent). But the dissent reached its conclusion about the First Amendment violation by reasoning that the only government interest in suppressing text-only emails about sexual abuse of children is "that such fantasies may 'whet[ ] the appetites of pedophiles and encourage[ ] them to engage in illegal conduct,'" and that interest "has been soundly rejected by the Supreme Court." *Whorley*, 550 F.3d at 350 (dissent) (quoting *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 253 (2002)). This Court should reject Defendant's reliance on a dissent in a Fourth Circuit case because it is neither binding nor persuasive authority. Indeed, the dissent in *Whorley* misapprehends First Amendment law generally, and obscenity law specifically. Defendant does the same by relying on that misguided dissent.

As to the "whetting of appetites", the *Whorley* dissent fails to acknowledge that the Supreme Court held in *Kaplan* that legislatures enacting obscenity statutes "need not wait until behavioral experts or educators can provide empirical data before enacting controls of commerce in obscene materials unprotected by the First Amendment or by a constitutional right to privacy." *Kaplan*, 413 U.S. at 120. The statement about "whetting appetites" comes from *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), in which the Supreme Court rejected the Government's argument that a statute prohibiting virtual child pornography complied with the First Amendment. The Court explained that the assertion that "virtual child pornography whets the appetites of pedophiles and encourages them to engage in illegal conduct" is not a sufficient rationale to sustain the statute because it was overbroad. *Ashcroft*, 535 U.S. at 236.

The *Whorley* dissent improperly relies on the *Ashcroft* reasoning because it assumes that the

---

[1] "When the Court declared that obscenity is not a form of expression protected by the First Amendment, no distinction was made as to the medium of the expression. Obscenity can, of course, manifest itself in conduct, in the pictoral representation of conduct, *or in the written and oral description of conduct*." *Kaplan v. California*, 413 U.S. 115, 118-19 (1973) (citations omitted and emphasis added). *See also Penthouse International, Ltd. v. McAuliffe*, 610 F.2d 1353, 1366 (5th Cir. 1980) (*Penthouse* and *Oui* magazines contained obscene textual articles).

obscenity statutes can only be constitutional if they have a government interest that is more than whetting the appetite of pedophiles. But *Ashcroft* reiterated that images not depicting real minors are subject to prosecution if they are obscene. That is, pornography can be banned only if it is obscene under *Miller*, but pornography depicting actual children can be proscribed whether or not the images are obscene because of the governmental interest in protecting children exploited by the production process. *Ashcroft*, 535 U.S. at 240 ("As a general rule, pornography can be banned only if obscene, but under *Ferber,* pornography showing minors can be proscribed whether or not the images are obscene under the definition set forth in [*Miller*].")

In other words, the constitutional infirmity in *Ashcroft* is not present in § 1462 because § 1462 requires the United States to prove prurient interest, patently offensive, and lack of serious value. This is the constitutional safeguard that the *Miller* standard requires for obscenity prosecutions. Thus, so long as those elements are met, the First Amendment is not violated. Indeed, the *Miller* standard—prurient interest, patently offense, and lacking in serious value—serves to narrow the statute such that the government interest is not merely in trying to prevent whetting the appetites of pedophiles, but instead to proscribe obscene materials such as the written materials in this case.

Furthermore, *Kaplan* makes clear that text-only materials do not have First Amendment protection if they are obscene, as defined in *Miller*, which makes *Miller* the limiting principle that was absent in *Ashcroft*. Consequently, the dissent in *Whorley* erred when it required a government interest beyond what the Supreme Court had already concluded was outside of First Amendment protection. In other words, the United States need not establish a government interest in proscribing the specific writings at issue in this case; it need only prove that the specific writings are obscene under the *Miller* standard.

Defendant next argues that the only way to prove the writings lack serious value is to "prove the distinction between famous works of art which depict adult/child sexual conduct and the challenged stories." (Def.'s Br. at 9.) Again, Defendant misapprehends the burden on the prosecution,

and fails to cite any authority imposing such a burden. The United States does not have to articulate the "distinction" between the challenged stories and some other unchallenged writing because the Supreme Court has made clear in *Paris Adult Theatre I* that "affirmative evidence that the materials were obscene" is not required when the materials are placed into evidence. *Paris*, 413 U.S. at 56. Indeed, the challenged stories in this case "are the best evidence of what they represent." *Id*. The community standards that the jury is tasked with knowing and assessing for the first two *Miller* prongs is not something that can be aided by a comparison to other writings. Similarly, the reasonable person standard of the third *Miller* prong is also not aided by distinguishing between the challenged writings and some other uncharged book.

  Defendant errantly relies on the notion that if a material exists anywhere on the internet, then it must be legal and therefore the United States should have to prove why the charged works are distinct from that presumptively legal material found elsewhere. Instead, Defendant's argument would be better served by identifying materials that have been prosecuted, found to be *not* obscene, and that are so similar to the charged materials as to be relevant for comparison. Defendant has done nothing of the sort. Quite the contrary, he has simply attempted to compare materials that have not been prosecuted as obscene with materials that are presently being prosecuted. That is akin to arguing that the cocaine being prosecuted in one case is not illegal because it is chemically identical to cocaine found in a back alley nearby that has not yet been confiscated and its purveyors have not yet been prosecuted.

  This Court should reject Defendant's argument that § 1462 is unconstitutional as applied to him because the *Miller* standard provides the First Amendment protection by requiring the United States to prove that the charged materials appeal to the prurient interest of a deviant sexual group (Defendant's Mr. Double website members), are patently offensive, and lack serious value in all categories.

## II. Visual depictions in Counts 1, 8, and 9 depict minors

Defendant next argues that the United States failed to prove that the individuals in the three obscene drawings were minors. Defendant first acknowledges that the United States need not prove that the individual is a "real" minor, but then rhetorically ponders how to define whether a cartoon character is a "minor." (Def's Br. at 10.) Defendant then attempts to frame the issue as a constitutional one, arguing that the statute as applied to him can be unconstitutional "if there is no proof that the subject work actually depicts a minor." (Def.'s Br. at 10.)

Such a basis for a judgment of acquittal falls squarely under a sufficiency of the evidence analysis, not a constitutional analysis. Indeed, if there is no proof that the drawings depict a minor, then the United States has failed to satisfy one of the elements of § 1466A, and thus the convictions on those counts should be overturned on sufficiency grounds. But such lack of proof says absolutely nothing about the constitutionality of the statute as applied to Defendant. It is merely a sufficiency argument so scantily clad in nothing more than constitutional perfume as to be flirting with obscenity itself.

Defendant cites *United States v. Eychaner*, 326 F. Supp. 3d 76 (E.D. Va. 2018), recognizing that the facts of that case are remarkably similar to the facts of this case, and that the court there held, on a post-trial motion for judgment of acquittal, that there was sufficient evidence for the jury to find the cartoon images obscene. But then Defendant again rhetorically ponders "whether, constitutionally, a conviction will stand when based upon" factors such as whether the character has youthful looks, a hairstyle consistent with children, and the relative size of the character's mouth in relation to the penis. (Def.'s Br. at 11 (citing *Eychaner*, 326 F. Supp. 3d at 89-90).) Defendant does not try to answer his own question or distinguish *Eychaner*, but instead just leaves it odoriferously hanging in the air.

In *Eychaner*, the defendant argued, in his renewed motion for judgment of acquittal, that his § 1466A conviction should be vacated because the United States failed to prove that the images

"depict minors as opposed to youthful-looking characters." *Eychaner*, 326 F. Supp. 3d at 86. The District Court observed:

> There is little dispute that most of the images at issue depict minors. Many of the characters are identifiably minors based on their obviously prepubescent features. Others can be identified as minors because of their sizes relative to the adults with whom they are engaged in sexual activity. The details in the images, such as clothing or hairstyle, also suggest that several of the characters are minors.

*Id.* at 89-90. The *Eychaner* court also explained that "[w]hile Defendant claims that her appearance is 'highly stylized' and that the image is ambiguous as to whether she is a minor, the character's breasts and genitals appear to show that she is prepubescent. The jury thus could have concluded beyond a reasonable doubt that this image depicted a minor." *Id.* at 90. With regards to another exhibit, the District Court explained:

> this image depicts a youthful-looking female character who is performing oral sex on a male. The female character is not identifiably a minor based on any visible prepubescent characteristics because only her shoulders and face are visible. The most identifiably childlike aspect of the character is that her hair is styled in pigtails. The male character is mostly out of view, but the female character's mouth is very small in comparison with his penis.

*Id.* The *Eychaner* court then rejected the defendant's argument that the ambiguity of pigtails alone meant that a jury could not find the character to be a minor. Instead, the court found that "a reasonable juror could have concluded beyond a reasonable doubt that the character was a minor based on the combination of the character's youthful looks, her hairstyle, and the relative size of the female character's mouth in relation to the male's penis." *Id.*

Here, Exhibits 11A and 12A have similar features to the image described in *Eychaner*. Both images depict characters with youthful looks. Both images depict characters with hairstyles that are consistent with young children. Both images depict characters whose entire heads are less than the length of the erect penis orally raping them. Indeed, in 11A, one of the character's thighs appears to be about the same size as the penis in her face. Additionally, in Exhibit 11A, one of the character's pubic area is visible, and it appears to be that of a toddler. Similarly, in Exhibit 12A, the child's chest is visible and there is zero breast development. Such features of the images provided more than

enough evidence for a juror to find beyond a reasonable doubt that the characters depicted were minors.

In yet another example, the *Eychaner* court explained that the context of a picture can aid the jury in concluding that the character is a minor. Specifically, the court referenced an image titled "denis the menace fucks his mom," and explained that it "depicts exactly what its title suggests." *Id*. Even though the character appeared to be roughly the same size as the mother, and no other characteristic was visible to show he is a minor, the fame of the Dennis the Menace character, who is known to be under the age of 18, was sufficient for the jury to conclude that it was a minor. *Id*.

Similarly, here, Exhibit 10A has context with the image itself to give the jury enough basis to conclude beyond a reasonable doubt that the image is of a minor. For example, the author page states that he "specializes in stories about little girls having sex." Additionally, he discussed a story his friend told him years ago that stuck with him and that was about three high school boys raping a "ten-year-old fifth-grade" girl. Those statements from the author on his own page give context to the image and provide enough for a reasonable juror to conclude that the image depicts a person under the age of 18.

Instead of engaging in a robust analysis of *Eychaner*, Defendant, once again, relies exclusively on the dissent in *Whorley* to make his argument, and then concludes with a pontifical shrug of the shoulders: "where and how can the line be drawn such that the plainly legitimate sweep of the statutes at issue does not catch within that sweep protected expression?" (Def.'s Br. at 13.) Defendant asserts that the *Whorley* dissent "deserves consideration by this Court" because its "textual argument is persuasive." Well. By that rationale, the dissent also deserves to be rejected by this Court because, ultimately, it was not persuasive enough for that three-judge panel, nor persuasive enough for *en banc* review, nor persuasive enough for the Supreme Court to review and adopt the dissent's explication since.

Indeed, a textual argument makes clear that Congress could not possibly have intended the

result that the *Whorley* dissent, and Defendant Arthur, seem to envision. Section 1466A specifically states that it prohibits "a visual depiction of any kind, *including a drawing, cartoon, sculpture, or painting*, that depicts a minor engaging in sexually explicit conduct." (emphasis added). The *Whorley* dissent concluded that § 1466A should be read "to only criminalize material, including cartoons and drawings, that incorporates actual children, even if those children cannot be conclusively identified." *Whorley*, 550 F.3d at 351 (dissent). The dissent does not explain how a cartoon can be of an actual child, nor how inconclusively identified a child can be before falling into the category of not being an actual child. The dissent acknowledges that an "obscene caricature of an actual person under the age of eighteen years would be appropriate under this statute," *Whorley*, 550 F.3d at 351, though it does not explain how close a likeness to the actual person the caricature needs to be to qualify or be deemed an actual person. Likewise, the dissent does not articulate how cartoonish is too cartoonish before the depiction ceases to depict an actual child. In other words, the *Whorley* dissent never tries to square the statutory language that expressly provides for cartoons of minors with the dissent's own judicial gloss on the statute that a cartoon must be of an actual child, even if not "conclusively identified." Neither does Defendant.

Of course, Occam's razor provides the answer: Congress intended to prohibit obscene images of even vaguely human looking characters so long as those characters appeared to be under the age of 18 and engaged in sexually explicit conduct. That simple explanation is supported by the text of the statute that includes "cartoon" as an example of what Congress was trying to prohibit. If Congress intended the cartoon to be of an actual child, then it would not have used the word cartoon at all.

### III.  Count 7 is constitutional

Finally, Defendant turns to the remaining Count 7, and asserts that the analysis of whether the conviction for that count should be vacated turns on "an exercise in logic." (Def's Br. at 13.) That is, Defendant asserts that if this Court finds any of his other arguments regarding the other counts persuasive enough to vacate the jury's finding, then this Court should likewise dismiss Count 7 as

well. Of course, the corollary is also true: If this Court concludes that all of the other counts should stand, then Count 7 should stand as well because Defendant has made no fresh argument.

Respectfully submitted,

By: /s/ Austin M. Berry
Trial Attorney
Child Exploitation & Obscenity Section
Department of Justice
1301 New York Avenue, NW
11th Floor
Washington, DC 20005
Austin.Berry2@usdoj.gov

## Certificate of Service

I hereby certify that on February 25, 2021, I filed this document with the Clerk using the CM/ECF filing system, which will cause a copy of the document to be delivered to counsel for Defendant:

Lane Haygood, Mark Bennett - Counsel for Defendant.

/s/ Austin M. Berry
Trial Attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| V. | **CRIMINAL NO. P:19-CR-774** |
| **THOMAS ALAN ARTHUR,** | |
| **Defendant.** | |

## ORDER

BEFORE THE COURT is Defendant's Post-Trial Motion for Judgment of Acquittal. The Court having considered the Motion and the United States' Response in Opposition finds that the Motion should be DENIED.

IT IS SO ORDERED.

SIGNED and ENTERED this _____ day of _____, 2021.

_____
DAVID COUNTS
United States District Judge