IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | Case No.  4:19-CR-00774-DC |
| | . | |
| Plaintiff, | . | Appeal No. 21-50607 |
| | . | |
| v. | . | |
| | . | |
| THOMAS ALAN ARTHUR, | . | |
| | . | |
| Defendant. | . | Tuesday, June 22, 2021 |
| . . . . . . . . . . . . . . | . | 3:38 P.M. |

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE DAVID C. COUNTS
UNITED STATES DISTRICT JUDGE


APPEARANCES:

| | |
|---|---|
| For the Government: | Department of Justice<br>Child Exploitation & Obscenity Section<br>BY: AUSTIN M. BERRY, ESQ.<br>601 North Loraine, Suite 398<br>Midland, Texas 79701 |
| For the Defendant: | Haygood Law Firm<br>BY:  LANE A. HAYGOOD, ESQ.<br>522 North Grant Avenue<br>Odessa, Texas 79761 |
| | Bennett & Bennett<br>BY:  MARK WILLIAM BENNETT, ESQ.<br>917 Franklin Street, 4th Floor<br>Houston, Texas 77002 |
| Deputy Clerk: | Cristina Lerma<br>United States District Court<br>200 East Wall Street, Room 222<br>Midland, Texas 79701 |
| Transcription Company: | Liberty Transcripts<br>7306 Danwood Drive<br>Austin, Texas 78759<br>(847) 848-4907<br>www.libertytranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

INDEX

|                             | Page |
|-----------------------------|------|
| Case called                 | 3    |
| Sentencing                  | 23   |
| End of Proceedings          | 27   |
| Certification of Transcriber | 28  |

WITNESSES:

FOR THE GOVERNMENT:

 (None.)

FOR THE DEFENDANT:

 (None.)

EXHIBITS:

FOR THE GOVERNMENT:

 (None.)

FOR THE DEFENDANT:

 (None.)

1          MIDLAND, TEXAS, TUESDAY, JUNE 22, 2021, 2:35 P.M.

2          THE COURT:  The Court calls U.S. v. Thomas Alan

3  Arthur in PE:19-CR-00774 today for sentencing.

4          MR. BERRY:  Good afternoon, Your Honor.  Austin Berry

5  for the United States.

6          THE COURT:  Yes, sir.

7          MR. HAYGOOD:  Good afternoon, Your Honor.  Mark

8  Bennett and Lane Haygood for Mr. Arthur who is also present.

9          THE COURT:  Very good.

10          Mr. Arthur, you're Thomas Alan Arthur, correct?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Yes?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Okay.  And, Mr. Bennett, you and Mr.

15  Haygood continue to believe Mr. Arthur is competent, correct?

16          MR. HAYGOOD:  We do, Your Honor.

17          THE COURT:  All right.  The Court having reviewed the

18  presentence investigation report will ask Mr. Bennett -- I

19  guess, Mr. Bennett, you're going to speak for Mr. Haygood at

20  this point at least.  Have you reviewed the presentence

21  investigation report with Mr. Arthur?  Mr. Haygood actually

22  has?

23          MR. HAYGOOD:  Yes, we have Your Honor.

24          THE COURT:  Very good.

25          Mr. Arthur, you have reviewed the report.  Is that

4

1   correct?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  Mr. Haygood or Mr. Bennett, either one, I

4   know there are several objections.  Let me first ask you are

5   there any corrections, I'm not asking about objections, any

6   corrections to the report, again, other than objections that

7   have not been made that you all wish to bring to the Court's

8   attention

9           MR. HAYGOOD:  I don't believe so, Your Honor.

10          THE COURT:  Okay.  And let's go to objections and who

11  wants to address those?

12          MR. HAYGOOD:  I can address them Your Honor.

13          THE COURT:  Come on up here then.

14          MR. HAYGOOD:  Okay.  This podium, Your Honor?

15          THE COURT:  Either one.

16          MR. HAYGOOD:  Okay.

17          THE COURT:  Whichever one you'd like best.

18          MR. HAYGOOD:  Okay.  Has the Court read through our

19  objections and --

20          THE COURT:  I have read through them all.  I've read

21  the probation officer's responses, as well.  So --

22          MR. HAYGOOD:  Very good.  Then I won't --

23          THE COURT:  Whichever ones you want to speak to, you

24  can.  If there are some you don't want to speak to, that's

25  okay.

1            MR. HAYGOOD:  Then I will not rehash some of the
2    background facts that we've put in here.  I think, Your Honor,
3    a lot of this comes down to what is relevant conduct and what
4    is not relevant conduct for the Court to consider in
5    sentencing.  For example, our third objection regarding the
6    identity of the alleged users of the Mr. Double website.

7            I don't believe that that falls within the Court's
8    definition of relevant conduct, specifically because there's no
9    way that the Government could show or that there could ever be
10   any proof as to what Mr. Arthur was or was not cognizant of
11   with the -- who these users were.  I mean they're using
12   pseudonyms.  They're not revealing their real identity to him.
13   He doesn't have any way to run background checks or anything
14   like that on him.  And there's really no way for him to have
15   sort of sifted through there to say, well, I find this person
16   to be an objectionable user of my website or not.

17           So I don't think that that should be added in the
18   relevant conduct.  The same thing with all of the interviews
19   and the allegations that were made about these other people
20   allegedly from Mr. Arthur's past who are coming through here
21   and making all of these statements, making all of these
22   accusations.

23           Obviously, these were not things that were pled in
24   the indictment.  These were not things for which we received
25   evidence.  These were not things for which Mr. Arthur had a

6

1 contemporaneous opportunity to cross-examine these witnesses.
2 They're not a part of the offense, and so I don't think that
3 they should be considered as a part of relevant conduct.

4       And the other thing that I would like to speak to on
5 this one, Your Honor, is the acceptance of responsibility
6 points.  And as this Court is aware, we did stipulate to a
7 number of matters at the trial, which I believe it would
8 entitle Mr. Arthur to at least the -- or, for sure, the two
9 points for acceptance of responsibility on this since really
10 the only issue that we kept live is the one that we had to to
11 preserve matters for appeal which is whether these materials
12 actually are obscene.

13       And that's the one thing that's very difficult to
14 determine at the outset because that requires the application
15 of contemporary community standards.  It almost necessitates
16 the finding of a fact finder with regard to whether these
17 materials are obscene.  So I believe that Mr. Arthur should get
18 two credits or the two-point downward departure for acceptance
19 of responsibility on that.

20       I will agree that the third point he would not get
21 because we did take this to trial and we did not timely enter a
22 guilty plea on that.  And, also, just by way of preserving this
23 argument, I think I know where the Court's going to come down
24 on it but by way of preserving this argument for appeal, our
25 seventh objection regarding whether the material involved the

1 sexual exploitation of a minor, there's no argument I think

2 from any court or in this that any of the images or stories

3 that were presented showed an actual minor.  I mean some of

4 them were drawings.  Now whether those drawings were of minors

5 or not, that was a fact issue that the jury resolved.

6          But looking at 7 and 8 in our objections, minor does

7 not include an imaginary child on this one.  So I would ask the

8 Court to consider that and whether those applications apply.

9 If there are any other particular ones the Court would like me

10 to address, I can.  But I know the Court's read them and I have

11 a strong indication that the Court has probably had

12 considerable briefing on this from court staff and --

13          THE COURT:  I have.

14          MR. HAYGOOD:  -- knows the law on this very well.

15          THE COURT:  Thank you, Mr. Haygood.

16          Mr. Berry, do you want to respond to any of that or

17 do you want to just wait?

18          MR. BERRY:  Very little, Your Honor.  I just want to

19 --

20          THE CLERK:  Use your microphone.

21          THE COURT:  It may not be on.

22          MR. BERRY:  It doesn't look like it's on.  I'm sorry,

23 Cristina.

24          THE COURT:  There we go.

25          MR. BERRY:  How is that?

1          THE COURT:  Perfect.

2          MR. BERRY:  Yeah, okay.

3          So the issues are relevant conduct, acceptance of

4    responsibility points, and the actual minor issue.

5          THE COURT:  Yes, sir.

6          MR. BERRY:  In reverse order, the actual minor issue

7    was largely briefed in the Defendant's post-trial motion for

8    judgment of acquittal.  I understand it's a slight nuance from

9    the statutory definition of it to the Guidelines --

10         THE COURT:  Right.

11         MR. BERRY:  -- definition of it.  But I don't think

12   that there's any reason under the Guidelines to provide a more

13   narrow definition of minor.  And so all of that argument and

14   law should be imported into this, I believe, and minor should

15   still be applicable.  It would make no sense for Congress to

16   say you can be convicted of the statute but you can't be

17   sentenced for it under a minor definition like the --

18         THE COURT:  Right.

19         MR. BERRY:  -- definition of the word "minor."

20         As far as acceptance of responsibility points, I

21   think the Ragsdale case out of the Fifth Circuit settles that

22   issue.  Probation has addressed that, and I think that's spot

23   on.

24         And as for the relevant conduct to the criminal

25   history of the users, again, it doesn't affect the Guidelines.

1 But I do think it's relevant to include in the PSR so that the

2 Court has a full view of the community that this Defendant

3 created for purposes of the proliferation of this type of

4 obscene material through the administration of this website.

5       And so whether he has knowledge, direct knowledge of

6 the criminal history of his individual users is not the point.

7 The point is that is a fact, that is a fact of his website, a

8 fact of his website of he had a lot of users.  And a not

9 insignificant percentage of identified users that we know about

10 did have criminal histories related to child exploitation.

11 That is a relevant fact for understanding the scope, scale, and

12 depravity of this particular website.

13       And so I think it should be included in the PSR and,

14 at a minimum, should be even if it were not included in the

15 PSR, I'd still be arguing it as a 3553(a) factor that this

16 Court should take into consideration.

17       And as to the allegations by the two victims, I think

18 that is absolutely critical for this Court to understand in

19 assessing this Defendant's history and characteristics.  And,

20 again, I would make the same argument under a 3553(a) analysis

21 if the Court didn't want to include it in the PSR.  It is

22 important for this Court to understand.

23       So whether it comes into the PSR as a technical

24 matter or not, this Court absolutely should consider that fact

25 and information and the Court is entitled to whether it's in

1   the PSR or not.  And we would certainly be advancing it in that

2   regard, as well.

3          But I think the probation officer got it spot on in

4   pointing to 6A1.3 in what this Court can and cannot consider.

5   And we think that that's the way the Court should rule on that

6   issue.  Thank you.

7          THE COURT:  Thank you.

8          The Court -- Mr. Berry, are there any objections or

9   corrections from the Government?

10         MR. BERRY:  There's a very minor correction or --

11   well, I guess at this point, it would technically be an

12   objection.

13         THE COURT:  Okay.

14         MR. BERRY:  It pertains to Objection Number 2.  It

15   does not affect the Guidelines.

16         THE COURT:  Objection 2 of the Government?

17         MR. BERRY:  It's the Defendant's Objection Number 2

18   that the --

19         THE COURT:  Okay.  Let me get to it.  I've got it

20   marked.

21         MR. BERRY:  Yes, sir.

22         THE COURT:  Yes, sir.  I'm there.

23         MR. BERRY:  It's Objection Number 2 by the Defendant

24   that the probation officer just granted, and I think I just got

25   the addendum finally emailed to me last week.  I don't have

1  access to the same way it's uploaded so once I -- by the time I

2  figure it out and I have to reach out and get it directly, I

3  got this.

4          And I noticed that in objection Number 2 or, to be

5  fair, my co-counsel, Ms. Morrison, noticed that in Objection

6  Number 2, the probation officer granted that objection saying

7  -- and it was about whether the Defendant -- whether there was

8  testimony at trial that said the Defendant knew whether certain

9  images were uploaded or not, whether he -- they could be auto-

10 uploaded by the user such that he might not have knowledge of

11 the 20,000 authors that might upload a picture, which would be

12 a fair argument if there was evidence that there was no

13 knowledge of that.

14          And I don't have access to the transcript from the

15 trial.  So the best I can do is point the Court to two items.

16 One is the transcript from the Defendant's own interview which

17 that interview was played in significant part for the jury from

18 Volume 2, pages 42 to 43, starting on lines 20 on page 42 and

19 going up to line 11 on page 43.  And I will briefly review this

20 here, and I have a copy of just those two pages for the Court

21 if it wants it.

22          The agent asked Mr. Arthur, "And I guess going back"

23 -- says, "And I guess, going back to the authors when they set

24 up their author pages, how do you screen the images that they

25 attach to their pen name or pseudonym or whatever?"

1    And the other agent says, "Avatar, if you would."
2  And Mr. Pearson again says, "Yeah, the avatar they attach to
3  their pen name or pseudonym."  And Mr. Arthur responds, "Well,
4  I -- it gets reviewed and I reject it.  It can't be a human,
5  you know, or copyrighted image."  And Mr. Pearson says, "So you
6  review each of them?"  Mr. Arthur, "Yeah.

7    So I think that settles it as to Objection Number 2.
8  He was aware.  He had direct control.  Nobody could upload a
9  story.  They also couldn't upload any images to it.  There was
10 some evidence that said he had some program that if somebody
11 emailed an image over the email server, it would just
12 automatically strip it.  That's obviously not entirely true
13 because some images made it to the website.

14   And there was no evidence of anybody having direct
15 access to it.  There was no testimony about that, any evidence
16 whatsoever that somebody could just upload anything they wanted
17 to the website.  He was the full and sole administrator of the
18 site.  Everything that went on that site he controlled.  And he
19 admitted it in his own interview which we admitted at trial.

20   We think that's relevant not for Guidelines
21 sentencing purposes for the calculation part of it but it is
22 certainly important for this Court to consider when thinking
23 about his knowledge and role in the administration of this
24 website.  He was the sole person who could control that, and he
25 admitted that in his own interview.

1        In addition to that, his wife, Sandra Arthur, again,

2   I don't have access to the trial transcript, but I do have

3   access to the grand jury transcript which is, of course, what

4   we use to guide her testimony at trial.  And in her grand jury

5   testimony starting on page 37, which was turned over to the

6   Defendants, at line 20 up to line 8 on page 38,it basically

7   says that, yes, he was the one that controlled that sort of

8   stuff.  He's the one that had access to it.

9        So it basically corroborates his own statements.  I

10  think his own statement is the thing to rely upon.  But I'd

11  just give that to the Court as additional information.  I think

12  both of those things came in at trial in the form of his own

13  interview and in the form of Sandra Arthur's testimony.  So for

14  that reason, I think Objection 2 was improperly granted by the

15  probation officer.

16       And I didn't give her much notice up until just

17  before this hearing to let her know that.  And I told her she

18  didn't have access to the transcript anymore than I do.  So

19  it's understandable that she wouldn't necessarily know that

20  fact.  She didn't watch the trial and doesn't have the

21  transcript anymore than I do.  But I do know that those two

22  facts are relevant to the consideration of Objection Number 2.

23  That's all I have.

24            THE COURT:  Thank you.

25            So the Court overrules the objections by the

14

1  Defendant for the reasons stated by Senior U.S. Probation
2  Officer Cara (phonetic) Foster.  I do overrule those
3  objections, the ones we've talked about here as well as the
4  ones that were merely written.

5        And I really can't add a whole lot to it.  I agree
6  with Officer Foster's -- Senior Officer Foster's responses.
7  And I could speak about each one of them.  I think I'd be
8  redundant, and I request the lawyer before me not to be.  And
9  so I'd prefer not to do the same thing that I ask them not to
10 -- you all not to.

11       I do grant the Government's objection on 2 to the
12 Defendant's Objection 2.  I remember that testimony
13 specifically because a light went off in my head.  I don't
14 recall the grand jury testimony, of course, because I wasn't
15 there.  And I don't remember her testimony as to that point if
16 she even testified.  I don't recall, but I do remember that
17 testimony as to Mr. Arthur's personally and being like the only
18 one.  He was the gatekeeper.  So that's my ruling there.  So I
19 do grant that.

20       I don't -- it doesn't impact the Guidelines, but I
21 think it's important to be accurate, as accurate as we can be.
22 So I'll overrule all of the defense objections for the reasons
23 stated and relied upon by the probation officer's response
24 there.

25       And the Court has reviewed the presentence

1  investigation report prepared by Senior U.S. Probation Officer
2  Cara Foster.  As I've stated, I adopt that report as well as
3  the application of the United States Sentencing Guidelines
4  contained in the report.

5         The Total Base Offense Level, Mr. Arthur, to be 42,
6  the Criminal History Category is I.  The Guideline range is for
7  basically Counts 1 through 9 are a total of 360 months to 1,080
8  months.  And we have supervised release in each count of one to
9  three years.  There's a fine of $50,000 to $250,000 that's
10  available.  There's no restitution.  And, Mr. Berry, I don't
11  believe there was any restitution that it was even discussed,
12  right?

13         MR. BERRY:  There was not, Your Honor.

14         THE COURT:  And a $100 mandatory special assessment
15  in each count totaling $900 for the Victims of Crime Act
16  pursuant to the Victims of Crime Act payable to Victims of
17  Crime Fund on sentencing.

18         There's one other matter I wanted to bring up, Mr. --
19  remind me, Mr. Berry, about the Government's position on
20  forfeiture.  I know Mr. Esparza was here for the trial.

21         MR. BERRY:  Your Honor, I have a direct quote that I
22  am to read to you.

23         THE COURT:  Excellent.

24         MR. BERRY:  "Please order that all items listed in
25  the preliminary order of forfeiture be ordered forfeited and

1   included in the JCC."

2            THE COURT:  Okay.

3            MR. BERRY:  I hope you understand that.

4            THE COURT:  I do.

5            MR. BERRY:  Okay, good.  Because I claim no knowledge

6   about forfeiture.

7            THE COURT:  I just wanted to make sure.

8            MR. BERRY:  And Mr. Esparza was apologetic that he

9   couldn't be here.  He shared that.  I said what do you want me

10  to tell Judge Counts.  That's exactly what he asked me

11  verbatim, so that's what I'm asking the Court.

12           THE COURT:  I'm trying to remember.  There was no --

13  the parties short-circuited that part of the trial, as I

14  recall, by agreement, right, Mr. Berry?

15           MR. BARRY:  That is correct, Your Honor.  Yes.

16           THE COURT:  So any objection to that?

17           MR. BARRY:  No, Your Honor.

18           THE COURT:  All right.

19           With that then, Mr. Haygood, what would you have the

20  Court consider as to Mr. Arthur?  You or Mr. Bennett, either

21  one or both.

22           MR. HAYGOOD:  Well, Your Honor, we'd ask this Court

23  to recommend that he be placed at FCI Buckner to serve his

24  sentence.  Of course, the application of the Guidelines range

25  may be outside of the statutory maximum for some of these

1  offenses.  And so we would ask the Court to consider an

2  appropriate sentence within the statutory range for these

3  offenses.

4          THE COURT:  I will.  I certainly will.

5          MR. HAYGOOD:  Oh, FMC Buckner.

6          THE DEFENDANT:  The medical center.

7          THE COURT:  Thank you.

8          MR. HAYGOOD:  The medical center, not the

9  correctional institution.  Obviously, my client has some health

10 issues, as the Court is aware, and so it would just -- it would

11 be best if he were in a facility where that could be handled.

12         THE COURT:  Yes, sir.

13         MR. HAYGOOD:  I know the Court has seen those and in

14 our objections and request for annotations to the presentence

15 investigation report.

16         The other thing, Your Honor, obviously, as the Court

17 has just entered the forfeiture judgment, my client's funds

18 have been depleted throughout his representation in this.  If

19 he does wish to appeal, I would ask the Court to appoint me as

20 I am one of your CJA attorneys for appeal to appeal this case.

21         I know it's not often that we do the appeal of our

22 own trials, but this is a very complex case.  And since I'm

23 already familiar with it, I believe that I can save everyone

24 some time and money on this not having to have a new attorney

25 come in and familiarize themselves with the multiple motions

1 and arguments that we've had in this case.  So if my client

2 does desire to appeal, I will of course handle the filing of

3 the notice of appeal and all of those documents.  But I would

4 ask the Court to appoint me under the Criminal Justice Act to

5 be the attorney responsible for his appeal.

6        (Pause)

7            THE COURT:  If I didn't mention it, Mr. Arthur's

8 ineligible for probation.  I was just checking on that because

9 I think I missed stating that.

10           MR. HAYGOOD:  Yes, Your Honor.

11           THE COURT:  Thank you.

12           Mr. Arthur, what would you like to say?

13           THE DEFENDANT:  Nothing, Your Honor.

14           THE COURT:  Mr. Berry?

15           MR. BERRY:  Thank you, Your Honor.

16           With regards to the nature and circumstances of the

17 offense, Your Honor, this is an unprecedented scale of

18 obscenity crimes with over 20,000 stories that this Defendant

19 administered on his website.  It's also an unprecedented level

20 of depravity in an obscenity case in terms of the content.

21           As Your Honor well remembers, there were stories

22 about raping pregnant mothers, ripping the fetus from the womb,

23 and using the fetus "as a condom" to engage in the necrophilia

24 of that mother.  The depravity of that content is quite

25 seriously unprecedented.

1          With regards to the history and characteristics of
2   the Defendant, the Defendant here bears evidence through the
3   statements of the other victims on the part of the relevant
4   conduct issue that he raped an adult woman while she was
5   sleeping, he molested a four- to five-year-old child.  And so
6   this is not just a case about the text stories on the internet,
7   but this is about a defendant who openly bragged about his
8   sexual interest in children, openly bragged about how he could
9   rape adults and children alike with impunity and get away with
10  it.  He bragged about that on his own website in terms of
11  communications with other people.
12          In terms of the seriousness of the offense, promoting
13  respect for the law, and providing just punishment, Your Honor,
14  Mr. Arthur was not a hobbyist.  This was not a casual part-time
15  endeavor.  This was a full-time job for this man -- not a job,
16  his own business -- for more than two decades.  He actively
17  tried to thwart law enforcement by advising his members how to
18  select usernames that were not similar to usernames that they
19  utilize on other online identities.
20          Instead of using his technological talents, which
21  were quite considerable, obviously, by being the administrator
22  of this website, instead of using those talents to assist the
23  world in identifying exploiters of children, he used them to
24  create an online community that celebrated and encouraged the
25  exploitation of children.

1          His house in the remote area of Terlingua is

2    basically a metaphor for his criminal activity.  He created a

3    safe place for like-minded pedophiles to congregate to share

4    their true stories of raping children and their fantasies of --

5    hopefully fantasies only -- of murdering such children.  He's

6    kind of like a drug dealer who invites thousands of people to

7    his house to trade drugs because he believes that trading drugs

8    should be legal.  And so he does so and creates this community

9    in this place and the safe space to do that.

10          In terms of the 3553(a) factor regarding deterrents

11   and public protection, as Your Honor is well aware, there is

12   both specific and general deterrents.  With regard to specific

13   deterrents, there is a need to deter this individual who has

14   flagrantly violated the law every day for 25 years and he did

15   so for profit.  There is a general deterrent's need to deter

16   and obscenity consumer, and I think this is really important,

17   from becoming an obscenity purveyor.

18          Again, this is not an individual who was just a

19   hobbyist and just a consumer.  We need a sentence that deters

20   that hobbyist, that mere consumer, from going from consumer to

21   administrator and distributor.  I believe a significant

22   sentence in that regard would exponentially reduce the

23   proliferation of such content by deterring it.

24          So what I mean by that is there is already an archive

25   of the Defendant's Mr. Double site located on another domain

name on the internet that we are actively pursuing and might
ultimately be bringing into this Court at some point.  And it
is a person who lauds Mr. Arthur's website and applauds it as
something that is a great First Amendment thing to do.  And so
there needs to be a sentence that deters copycats and people
who think, yeah, this is good stuff and there's a First
Amendment right to this and we should engage in more
proliferation.

        In terms of unwarranted sentencing disparities, this
is unlike any other obscenity case I'm aware of, both in terms
of the volume of proliferation is staggering.  And I tried to
think of a way to put this in concrete numbers to understand
the volume of it.  And the only thing I could point to was
Exhibit 18, which I know you remember very well.  So I'm going
to remind you because I had to go back and remind myself which
exhibit that was.

        That was an author's balance report, and it was a
spreadsheet database of 129 pages.  And we didn't put in every
single one of them, but Exhibit 18 was one that we put into
evidence.  And it shows only a list of authors from August of
1999.  So he started the website a few years earlier, about
three years earlier, and in August of 1999, it shows columns of
authors, the stories they wrote, and the number of downloads
that had occurred for each of those stories because you might
recall there was a time where the Defendant was actually paying

22

1  authors --

2          THE COURT:  Right.

3          MR. BERRY:  -- for their volumes so -- or for the

4  downloads as a way to get more stories, new content in.  And so

5  he was keeping track of that information.

6          He ultimately stopped tracking that because he

7  stopped paying authors, so there's not comprehensive data for

8  the full 25 years.  So we have a snapshot.  We have a snapshot

9  in August of 1999 in Exhibit 18.  And if you total up the

10  number of downloads for the stories by all of the authors that

11  he had listed there, it was over 32,358,345 total downloads of

12  stories as of August of 1999.  32 million downloads of this

13  disgusting depraved stuff in the first three years.

14          I'm assuming, I'm going to give the benefit of the

15  doubt that that's an aggregate amount over those three years

16  and not August 1999 or even 1999 or the last 12 months.  I'm

17  going to call that an aggregate because I don't know any

18  different.  And so I think that's the fairest way to look at

19  that for the Defendant.

20          But even giving that benefit of the doubt, 32 million

21  in the first three years, so you just gently very easily

22  extrapolate that out and you can get above 100 million

23  downloads of this stuff over the lifetime of this website very

24  easily.  And that's generous.  I think that's a conservative

25  estimate.

1       So when you think about that volume and you think

2   about his own characteristics involving contact defending

3   against children, we believe that this sentence should be

4   significant.  I'm not going to specify a particular sentence.

5   I think a Guideline sentence is appropriate in this case, and

6   the Guidelines are 360 to 1,080.  But we think a Guideline

7   sentence would be appropriate.  And I appreciate your time,

8   Your Honor.

9       THE COURT:  Thank you.

10      The Court does not depart from the recommended

11  sentence pursuant to the Sentencing Reform Act of 1984 which I

12  have considered in an advisory capacity and the sentencing

13  factors set forth in 18 U.S.C. Section 3553(a), which I have

14  considered in arriving at a reasonable sentence.

15      I find the Guideline range in this case and each

16  count to be fair and reasonable.  The Defendant is placed in

17  the custody of the United States Bureau of Prisons to serve a

18  term of imprisonment as follows: For Count 1, 240 months; as to

19  Count, 60 months, that term to run consecutively to the term of

20  imprisonment in Count 1; Count 3, 60 months, that term to run

21  consecutively to the term in Count 2; Count 4, 60 months to run

22  consecutively to the term of imprisonment in Count 3; Count 5,

23  60 months to run consecutively to Count 4; Count 6, 60 months

24  to run concurrently with Count 5; Count 7, 60 months to run

25  concurrently to Count 6; Count 8, 80 months to run concurrently

24

1 to Count 7; and Count 9, 60 months to run concurrently to Count

2 8.

3   Upon release from the United States Bureau of

4 Prisons, you're placed on supervised release to serve a term of

5 three years in each count -- as to each count, those to run

6 concurrently.  The standard and mandatory conditions of

7 supervision are imposed.

8   Additionally, the Defendant shall not view or possess

9 any visual depiction as defined in 18 U.S.C. Section 2256,

10 including photographs, film, video, picture, or computer or

11 computer generating a picture, whether it may have been

12 produced by electronic, mechanical, or other means of sexually-

13 explicit conduct as defined by that same statute.

14   Second, the Defendant shall not have direct contact

15 with any child the Defendant knows or reasonably should know

16 being under the age of 18 without permission of the probation

17 officer.  And, of course, there's instruction as to if there is

18 any direct contact, Special Condition Number 3.  Defendant

19 shall submit to the search condition of supervision within the

20 Western District of Texas.

21   The Court imposes a $50,000 fine, and there's a $100

22 mandatory special assessment pursuant to the Victims of Crime

23 Act as to each count totaling $900.  Your presentence report

24 will be sealed.

25   You have the right to appeal your conviction and your

1 sentence.  And you must file a notice of appeal in writing

2 within 14 days of the entry of this judgment.  If you're unable

3 to afford the appellate cost, those services will be provided

4 at no expense to you.

5          I will leave that to the magistrate judge.  But, Mr.

6 Haygood, I'll pass along your request, and I will encourage him

7 to do so.  I'll also recommend Buckner, we said FMC, right?

8          MR. BENNETT:  FM --

9          MR. HAYGOOD:  FMC, Your Honor.

10          THE COURT:  Okay.  I wanted to make sure Mr. Bennett

11 was ready to jump on that.  I'll recommend that.

12          MR. BENNETT:  Thank you, Your Honor.

13          THE COURT:  Of course, Mr. Arthur, that may or may

14 not be something the BOP is able to do.  And in the life of

15 your sentence, they may be able to at some point if they're not

16 initially.  And that may also be something they can do

17 initially.  But they'll make that decision, not me, of course,

18 considering a number of things that the Court's not privy to.

19          Mr. Berry, anything further on behalf of -- oh, and

20 if there's any question about the forfeiture, we've got that

21 taken care, right?  And everybody --

22          MR. BERRY:  If Your Honor is --

23          THE COURT:  Do you want to make it --

24          MR. BERRY:  -- adopting the language that I --

25          THE COURT:  I'm adopting the exact language that you

1  stated.

2          MR. BERRY:  Okay.

3          THE COURT:  Because I don't have it in front of me,

4  but --

5          MR. BERRY:  Ordering that all items listed in the

6  preliminary order of forfeiture be ordered forfeited and

7  included in the JCC.

8          THE COURT:  Yes, sir.  And that's done without

9  objection and by agreement, so.

10          MR. BERRY:  And the only other thing, Your Honor, is

11  if it would -- if the Court would consider stating -- and if

12  you said and I didn't hear it this time, if the Court had

13  granted all the objections, would the sentence have been the

14  same?

15          THE COURT:  It would have been had I granted all the

16  objections.  Thank you.  And I meant to say that.  Even had I

17  granted all of Defendant's objections, I would have come to the

18  same conclusion as to the sentence.  You'll notice that the

19  range goes up to over 1,000 months and begins at 360.  The

20  total that I counted is 480 months sentencing.  So well toward

21  the lower end.

22          Mr. Haygood, anything more from you or Mr. Bennett?

23          MR. HAYGOOD:  Not at this time, Your Honor.

24          THE COURT:  Mr. Bennett, are you good?  Mr. Bennett?

25          MR. BENNETT:  No.  Thank you, Your Honor.

1          THE COURT:  Mr. Arthur, I remand you to the custody

2   of the United States Marshals to serve your sentence.   Thank

3   you to the attorneys.  I appreciate everybody.

4          MR. HAYGOOD:  Thanks, Judge.

5      (Proceedings concluded at 3:08 p.m.)

6                          * * * * *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                   **C E R T I F I C A T I O N**

2           I, Dipti Patel, court-approved transcriber, hereby

3   certify that the foregoing is a correct transcript from the

4   official electronic sound recording of the proceedings in the

5   above-entitled matter.

6

7

8   _____

9   DIPTI PATEL, AAERT NO. 997          DATE:   September 13, 2021

10

11   LIBERTY TRANSCRIPTS

12

13

14

15

16

17

18

19

20

21

22

23

24

25