```
 1                UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF TEXAS
 2                      PECOS DIVISION

 3  UNITED STATES OF AMERICA ) Docket No. PE 19-CR-774(1) DC
                             )
 4  vs.                      ) Pecos, Texas
                             )
 5  THOMAS ALAN ARTHUR       ) April 23, 2020

 6
                   TRANSCRIPT OF MOTION HEARING
 7           BEFORE THE HONORABLE DAVID B. FANNIN

 8  APPEARANCES:

 9  For the United States:   Ms. Monica R. Morrison
                             Assistant U.S. Attorney
10                           110 9th Avenue South,
                             Suite A961
11                           Nashville, Tennessee 37203

12                           Mr. Austin M. Berry
                             Assistant U.S. Attorney
13                           Department of Justice
                             Child Exploitation &
14                           Obscenity Section
                             601 North Loraine Street,
15                           Suite 398
                             Midland, Texas 79701
16

17  For the Defendant:       Mr. Mark William Bennett
                             917 Franklin Street, 4th Floor
18                           Houston, Texas 77002

19                           Mr. Lane A. Haygood
                             Bailey and Galyen
20                           3800 East 42nd Street, Suite 110
                             Odessa, Texas 79762
21

22  Transcriber:             Ms. Lily Iva Reznik, CRR, RMR
                             501 West 5th Street, Suite 4153
23                           Austin, Texas 78701
                             (512)391-8792
24

25  Proceedings reported by digital sound recording,
    transcript produced by computer aided-transcription.
```

1                    (Proceedings commence at 11:21 a.m.)

2                    THE CLERK:  Court calls:  PE-19-CR-774, <u>United

3      States of America vs. Thomas Alan Arthur</u>.

4                    MS. MORRISON:  Monica Morrison and Austin Berry

5      present on behalf of the United States.

6                    MR. BENNETT:  Mark Bennett on behalf of Mr.

7      Arthur (indiscernible) Lane Haygood, who apparently is not

8      visible on video but he's here (indiscernible).

9                    THE COURT:  Good morning.  Good morning,

10     gentlemen.

11                   And, Mr. Arthur, are you able to hear what we're

12     doing today?

13                   THE DEFENDANT:  Yes.

14                   THE COURT:  Mr. Arthur, you are appearing today

15     by videoconference.

16                   And, Mr. Bennett, do you have any objection to

17     Mr. Arthur appearing in his jail -- in the jail by video?

18     Do you have any objection?

19                   MR. BENNETT:  I have no objection, your Honor.

20                   THE COURT:  Thank you.

21                   And, Mr. Bennett, we are here on your motion for

22     discovery; is that correct?

23                   MR. BENNETT:  That's correct, your Honor.

24                   THE COURT:  And essentially, what you're looking

25     to discover are -- is the drawing that is made -- the

1  drawing that is alleged in Count 1 and then, the obscene
2  stories as they're listed in Counts 2, 3, 4 and 5.
3          Is that correct?
4          MR. BENNETT:  That's correct, your Honor.
5          THE COURT:  And would you like to make -- would
6  you like to make an argument concerning why these matters
7  are discoverable at this time?  Or is there --
8          MR. BENNETT:  Certainly, your Honor.
9          Your Honor, I believe that the argument is well
10 captured in the papers.  We filed our motion.  The
11 government filed a response yesterday to which we filed a
12 response yesterday.  Essentially these are squarely --
13 these documents fall squarely under Rule 16(a)(B)(i)
14 because, among other reasons, the government intends
15 (indiscernible) to introduce them in its case-in-chief.
16 This is the (indiscernible).  This is what case law is
17 about is whether these items are obscene or not.
18         This court has discretion to do what this court
19 will do, but the government has made no legal argument for
20 the government not being required to allow us to make
21 copies of this image, the drawing and these stories.  The
22 reason that we need to be able to have copies of them is
23 we have an expert witness -- potential expert consulting
24 at this point in Austin who we need to be able to review
25 stories.  And we have another potential consulting expert

1  who we need to be able to view the image, the drawing to
2  form an opinion on whether they are obscene.  And
3  specifically what I expect expert testimony to go to is
4  whether there's a serious value to these (indiscernible)
5  serious artistic (indiscernible) scientific value.
6          THE COURT:  Okay.
7          MR. BENNETT:  So that's the argument, your Honor.
8  (Indiscernible) they are not child pornography, so the
9  statute that prevents the copying of child pornography
10 does not apply.  The government has made a victims' rights
11 argument yesterday, which I hadn't seen or considered
12 before.  The government's victims' rights argument as to
13 these were -- hinges on the speculative idea that people
14 (indiscernible).  Well, first, we don't know who they are.
15 We don't know that they are real people.
16         Second, even if we did know they are real people,
17 we wouldn't know who they are.  And third, the victims'
18 rights act does not in any way impinge on the government's
19 -- the government's requirement of allowing us to make
20 copies of things that they plan to introduce at trial.
21         THE COURT:  And tell me how in terms of the
22 drawing in Count 1 that is referenced in Count 1, how
23 could that -- tell me why that is not covered under 2256.
24         MR. BENNETT:  Because in 2256 covers only images
25 -- only images that were made with sexual abuse.  And

1  specifically, 2256 is directed at photographs, which is
2  why the obscene nonphotographic images statute, which is
3  what we've been indicted under, was passed into law.  So
4  it's not child pornography because it is a -- I haven't
5  seen it, but my understanding is, it's a line drawing.
6  It's more like a cartoon than like a photograph or
7  documents (indiscernible).
8          THE COURT:  Ms. Morrison, would you like to
9  respond?
10         MS. MORRISON:  I would, your Honor.  And I
11 understand Mr. Bennett hasn't had the opportunity to see
12 the drawing because he wasn't here.
13         THE COURT:  Mr. Bennett, are you able to hear Ms.
14 Morrison?
15         MR. BENNETT:  Yes, your Honor, I am able to hear
16 her.  She's actually easier -- a little clearer than the
17 Court.  I don't know if the microphone is somewhere
18 between the Court and Ms. Morrison, but I could hear her
19 fine.
20         THE COURT:  Thank you.
21         Ms. Morrison.
22         MS. MORRISON:  Your Honor, so I understand that
23 Mr. Haygood has had the opportunity to see the drawing
24 because he was present at the last hearing.  Mr. Bennett
25 was not.  I want to make sure that the Court is clear,

1  this is not a cartoon drawing.  And we actually have Agent
2  Ewan here with the drawing, with the stories in case the
3  Court wants to conduct an in-camera review.  We have those
4  materials available.
5          But this is not akin to a drawing.  It's very
6  clear what this item is depicting.  You can see the
7  genitalia of the female, the prepubescent female depicted
8  in the drawing.  I understand defense counsel sees --
9          THE COURT:  I think we're having a difficult time
10 hearing you.  Can you speak into the microphone, please?
11         MS. MORRISON:  Okay.  Your Honor, I'll --
12         THE COURT:  You could remain seated if you'd
13 like.
14         MS. MORRISON:  Oh.  Okay.  Thank you, your Honor.
15 Can you hear me now, Judge?
16         THE COURT:  I could hear you fine.  I'm just
17 making sure the defense lawyer can hear you, also.
18         MS. MORRISON:  Mr. Bennett, can you hear me?
19         THE COURT:  Yes, he can.
20         MS. MORRISON:  Okay.  Thank you.
21         I understand that we see these different -- these
22 items differently but we -- it's our -- the government's
23 position that this is clearly contraband.  And I think the
24 Court recognized that these materials are of a sensitive
25 nature --

1          MR. BENNETT:  I'm sorry, Judge.  I think she's
2   talking too quickly and it's cutting out every third
3   syllable.  So I'm hearing half what she's (indiscernible).
4          MS. MORRISON:  Okay.
5          THE COURT:  Let's -- could you just go a bit
6   slower maybe?
7          MS. MORRISON:  Hopefully we can get through this.
8          THE COURT:  Maybe.
9          MR. BENNETT:  If I might suggest that the marshal
10  who is with Mr. Arthur leave the microphone in the -- in
11  his CJC, that might make it a little bit better.
12         THE COURT:  Marshal, would you please do that?
13  Thank you.
14         MS. MORRISON:  Okay, your Honor.  I'm going to
15  repeat myself just to make sure defense counsel can hear
16  me at this point in time.
17         Obviously we see these items differently, but I
18  would point out that the Court has already acknowledged
19  the sensitive nature of this material because the drawing
20  and the five stories were attachments to the search
21  warrant, and when this search warrant was executed, all of
22  these items were sealed.
23         So the Court itself has already acknowledged the
24  sensitive nature of these materials.  It's our position
25  these materials are contraband.  Because they are

1  contraband, they should be treated differently.  We
2  certainly have no issue making these items available to
3  defense counsel and their experts.  We've indicated our
4  willingness to facilitate that.  We will make that happen
5  as quickly, as often as defense counsel needs to do that.
6  But we have very serious concerns about simply producing
7  copies of these materials without any sort of restrictions
8  in place.
9          As far as the victims' rights act goes, Judge,
10 while these stories do contain disclaimers and say that
11 they depict fictional events and they're simply fantasy,
12 at least with respect to Mr. Arthur, we now have the
13 benefit of knowing, which we didn't know when we appeared
14 in front of this court on a bond hearing, that Mr. Arthur
15 is writing, at least in one of these stories, about an
16 actual person.
17         During a download of the defendant's devices,
18 e-mails were located to a Karen Fletcher wherein the
19 defendant specifically identifies by name the inspiration
20 for his stories.  We also have a particular story that
21 he's identified, it's about that individual.  Now, in all
22 candor to the Court, that individual has been located and
23 identified and does not recall being sexually abused Mr.
24 Arthur as a child.  However, a female relative of hers has
25 stated she was sexually abused on at least two occasions

1  by Mr. Arthur.
2          Also for the Court's information, some of the
3  themes that the defendant's stories relate to performing
4  sex acts on children, while those individuals were
5  sleeping, we have subsequently located a female adult who
6  Mr. Arthur committed sex acts while she was unconscious,
7  which is confirmed by postings that the defendant made on
8  the website.  The form associated with his website.
9          So while we may not know whether, in fact, these
10 stories depict real events, we at least know some of the
11 individuals in these stories are real people, at least as
12 to Mr. Arthur.  So I think we have to be concerned also
13 about the stories as to other individuals.
14         I know your Honor has read the briefing, so the
15 Court is aware that of nine of the 19 identified users of
16 this website, nine of those individuals either have
17 convictions for child pornography, child sexual abuse.  So
18 we know that these individuals have perpetrated on
19 victims, either live victims or perpetrated through the
20 viewing and distribution of child pornography.  So I think
21 we have to be concerned that these -- these may be actual
22 stories, and these individuals are entitled to protection.
23         If the Court thinks that the government is
24 required to produce copies, then there need to be
25 protections in place.  Defense counsel's arguing that a

1  protection order is unnecessary, but given the nature of
2  these materials that these materials weren't just
3  maintained in a home, they were put on a website, it was
4  active since 1996.  Many individuals have viewed this --
5  these materials, and I think there needs to be some
6  protections in place.
7           I think the most logical way to handle this is to
8  have these items viewed at a government facility in the
9  Pecos Division, whether that's the courthouse here at the
10 Alpine if COVID -- the outbreak ends soon, at the U.S.
11 Attorney's Office in Alpine.
12          THE COURT:  And, Ms. Morrison, given that the
13 city of Alpine is practically closed, there's no place for
14 somebody to stay overnight.  And I know that Mr. Bennett
15 has an office in Odessa.  If I were to deny the
16 defendant's motion for discovery in this case, what I
17 would -- probably what I would want to consider is that
18 you make the materials available to the defendant at the
19 FBI office in Midland.
20          Let me ask you this:  Is the FBI office in
21 Midland under the same restrictions as the U.S. Attorney's
22 Office is?
23          MS. MORRISON:  No, your Honor.  That's part of
24 the reason we had proposed viewing these materials during
25 the outbreak at FBI in Alpine because they are not under

1  the same restrictions.  I've just conferred with Agent
2  Ewan.  He's advised that FBI Midland is not under the same
3  restrictions as the U.S. Attorney's Office in Alpine or
4  Midland.  So it would be possible for those materials to
5  be viewed in Midland if the Court so desires.
6          THE COURT:  And, Mr. Bennett, I am going to deny
7  your motion.
8          MR. BENNETT:  Before that, may I respond to what
9  the government has alleged?
10         THE COURT:  Of course you can.
11         MR. BENNETT:  Thank you, your Honor.  The
12 government has said that they contend these images are
13 contraband.  The government concedes, I believe, that the
14 answer to the Court's first question, which is why aren't
15 -- why is the drawing child pornography is -- this drawing
16 is not child pornography.  The government is not
17 contending, as I understand it, that this drawing is child
18 pornography nor, of course, can the stories be child
19 pornography because they're mere text.
20         I don't have an office in Odessa.  Mr. Haygood
21 has an office in Odessa.
22         THE COURT:  I'm sorry.
23         MR. BENNETT:  (Indiscernible) a expert in Austin
24 to view the stories in Odessa will require travel on an
25 airplane from Austin to Odessa, which seems imprudent in

1 at this current time, we're still under a nationwide
2 emergency regarding COVID.
3          The government has talked about stories allegedly
4 written by Mr. Arthur.  I believe, and perhaps the
5 government could confirm, that these stories allegedly
6 written by Mr. Arthur are not among the works that we're
7 talking about here today.  The works that we're talking
8 about here today, as far as anybody in this conference
9 knows, I believe, we don't know whether they're actual
10 true stories about actual human beings.
11          However, the interests of any potential actual
12 victims in privacy would certainly be maintained by Mr.
13 Haygood and by me.  We would not be sharing these stories,
14 these images with anybody other than the experts who are
15 retained to give this opinion, which is crucial to the
16 defense of Mr. Arthur's case.
17          So the government says, well, the protective
18 order is necessary.  You don't (indiscernible) a
19 protective order.  Of course, when you object to a
20 protective order, you say it's not necessary because we're
21 ethical lawyers.  We've been practicing for collectively
22 almost 40 years.  And we're -- we have no interest in
23 seeing the people who have been victimized by adults
24 sexually and seeing them further victimized.  We have no
25 interest in the identity of the people who might be

1 described in these stories be disturbed in any way.

2 So I ask -- I know the Court has said
3 (indiscernible). I ask the Court to reconsider this in
4 light of COVID, in light of the fact that these are images
5 that are lawful for Mr. Haygood and for me to possess in
6 the course of defending this case and in light of the fact
7 that it's crucial to Mr. Arthur's defense that experts
8 have access to these images and that they be able to give
9 us an opinion on the value of the image and
10 (indiscernible) -- the image and the stories. Thank you,
11 your Honor.

12 THE COURT: Thank you.

13 Ms. Morrison, would you like to respond or are
14 you satisfied?

15 MS. MORRISON: Your Honor, I think I'm satisfied.

16 THE COURT: Okay. I'm still inclined to deny the
17 defendant's motion for discovery in this case and -- but
18 I'm going to order that the government make access to
19 allow the defense experts to have access to this material
20 at the FBI office in Midland.

21 And I understand that this would entail some
22 travel from Austin to Midland for the expert to view this
23 material, but I don't think that is a particularly onus
24 requirement to make of the expert, even in the time of
25 COVID-19. I understand that there are places where people

1  -- that the -- there will be places for the expert to stay
2  in Midland if that's -- if I'm wrong about that, then
3  counsel can correct me and I'm willing to accept that.
4          But that's -- at this time, that's as far as I'm
5  going to go in this case.
6          Is there any -- do we have anything else we need
7  to talk about, counsel?
8          MS. MORRISON:  No, your Honor.
9          MR. BENNETT:  Yes, your Honor, one more thing.
10 The identity of a consulting expert in the ordinary
11 privilege, it's work product privilege.  In order for my
12 experts to view these documents, works at the government
13 facilities still have to provide their identities, which I
14 don't have any great objection to reviewing the -- this
15 work (indiscernible) work product privilege in itself, but
16 I would like a protective order from the Court requiring
17 that the government not use these identities in the
18 preparation of their case until and unless the disclosure
19 of the -- of the witnesses is required under Rule 16.
20 Specifically that the government be ordered not to contact
21 or communicate with these people who are going to be my
22 potential consulting expert witness.
23         THE COURT:  I would issue a protective order
24 under those circumstances, yes.  I would grant your
25 request for a protective order for your consulting

1  experts.  Is that --
2           MR. BENNETT:  I'm sorry.  I didn't hear the
3  first --
4           THE COURT:  I would grant and agree with your
5  request for a protective order concerning your -- the
6  identities of your consulting experts.  Is that correct --
7  is that -- and that the government would not be entitled
8  to communicate with those consulting experts as long as
9  they are -- remain so.
10          MR. BENNETT:  Thank you, your Honor.
11          MR. HAYGOOD:  Thank you.
12          THE COURT:  Ms. Morrison, is there anything else
13 we need to talk about?
14          MS. MORRISON:  No, your Honor.
15          THE COURT:  Then that concludes this hearing
16 today.  Thank you, counsel.  Thank you, Mr. Arthur.
17          MR. BENNETT:  Thank you, your Honor.
18          (Proceedings conclude at 11:41 a.m.)
19
20
21
22
23
24
25

REPORTER'S CERTIFICATE

I, LILY I. REZNIK, DO HEREBY CERTIFY THAT THE FOREGOING WAS TRANSCRIBED FROM AN ELECTRONIC RECORDING MADE AT THE TIME OF THE AFORESAID PROCEEDINGS AND IS A CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, MADE FROM THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, AND THAT THE TRANSCRIPT FEES AND FORMAT COMPLY WITH THOSE PRESCRIBED BY THE COURT AND JUDICIAL CONFERENCE OF THE UNITED STATES.

/s/*Lily I. Reznik*                              Septmber 16, 2021

LILY I. REZNIK, CRR, RMR                         DATE
Official Court Reporter
United States District Court
Austin Division
501 W. 5th Street, Suite 4153
Austin, Texas 78701
(512)391-8792
SOT Certification No. 4481
Expires:  1-31-23